WITHAM *et al. v.* STATE.

(*Nashville,* December Term, 1949.)

Opinion filed July 15, 1950.

HUNTER LANE, of Memphis, for plaintiff in error.

J. MALCOLM SHULL, Assistant Attorney General, for the State.

MR. JUSTICE PREWITT delivered the opinion of the Court.

Defendants Witham and English appeal from conviction of robbery and sentence of imprisonment in the penitentiary for the statutory minimum of five years.

Defendants were arrested and indicted by the grand jury of Shelby County, on the charge of forcibly robbing the prosecutor, M. V. Gowan, of personal property, which consisted of $26 in cash, one wrist watch of the value of $75, and one automobile of the value of $3100. This is the second trial of this case. The first trial resulted in a mistrial, as the jury was unable to agree on a verdict.

Prior to the first trial of these defendants, Dorsey Barnett (Burnette), a minor sixteen years of age, who accompanied defendants on the night of the robbery, plead guilty to a charge of this robbery before the Juvenile Court of Shelby County, and was sentenced to two years in the State Training & Agricultural School.

On the afternoon before the robbery that night, November 12, 1949, Gowan attended the Ole Miss-Tennessee football game in Memphis at Crump Stadium. During

the course of the game he had about four drinks of whisky with friends in the stadium. After the game he had guests at home and served one drink around. Gowan was a supervisor for Liberty Cash Grocery Stores. During the evening he went to one of these stores with which he was connected, where he remained for about two hours. When he left he purchased a pint of whisky and went to a place known as the Pit. At this place Gowan saw some friends and had something to drink with them. Upon leaving the Pit he was hit in the back of the head with a beer can and knocked partially unconscious by one or two men, who promptly left in a maroon Ford.

About this time defendants and the Barnett boy, together with one Curtis Freshour, arrived at the Pit. Defendants were employed as carpenter helpers. At noon on this Saturday they had each been paid about $40 for their week's work, and they then started drinking beer. Unquestionably all four of the boys had consumed a sufficient amount of beer to intoxicate them. Upon arriving at the Pit, however, they were sufficiently sober to ask Gowan if they could render him assistance. He told them some men assaulted him, had taken his hat, and asked if either of them could drive. English replied that he could, whereupon the four boys and Gowan got in his car, and English drove it to the Silver Slipper, about eight or ten miles away. When they failed to find this maroon car, Gowan drove his car back to the Pit. Defendants testified that Gowan accused Freshour of having his hat, as a result of which they had some difficulty. Upon arriving near his home in Memphis, Freshour got out of the car and went home, and English (who lived across the street from Freshour)

remained in the car. The record does not show why defendants did not call Freshour as a witness. Barnett testified that after Freshour got out of the car and they had started back to the Silver Slipper, that they stopped at a bridge, where he and defendants agreed they would rob Gowan. English was driving at the time they left the bridge. After driving some distance English thought a car that was following them was the Sheriff's car, and turned off on a gravel road. Being unfamiliar with the hydromatic drive, he was unable to get the car in reverse when he endeavored to turn it around. Gowan turned the car around and English resumed driving. Barnett testified that during this time he and Witham were on the back seat of the car; that he hit Gowan, who was on the front seat, over the head; that he and Witham then dragged him (Gowan) onto the back seat. Gowan testified that as English continued to drive, the other two boys beat him unmercifully, tearing off all his clothes except one shoe. In his confession, Witham states that he searched Gowan's clothes and took all his property except his billfold, which was already out of his pocket. Gowan testified that there was a threat to cut him in the back with a knife if he did not quit making so much noise. The boys had Gowan on the floor board in·the back of the car. Obviously one of the boys took off·one of Gowan's shoes and beat him over the fingers until he released his wedding band.

Sometime during the struggle Gowan got out of the car and tried to escape, but one of the boys caught him and brought him back to the car. Gowan testified that they later let him out, with nothing on except one shoe and shorts, notwithstanding the fact that it was raining and the temperature was about thirty degrees. Gowan

further testified that he pleaded with the boys until they threw his other clothes to him, and that he walked until he came to a farmhouse and requested the occupant to call the Sheriff. A Deputy Sheriff, answering a call, picked Gowan up at about 3:30, in a very badly bruised and bleeding condition, and took him to the hospital.

After Gowan escaped, English continued to drive the car until he ran it off the road and wrecked it. There is evidence that English took rocks and broke the taillights on the car to keep it from being observed by passing motorists.

Barnett testified (and defendants state in their confessions) that they walked through the fields and woods until they came to a farmhouse and inquired how they could get to Memphis. Barnett further testified that in going through the fields and woods they stopped to divide the stolen property, he taking $9.50 in cash and the other two boys taking $10, each. English states in his confession that Witham took Gowan's watch. In the early morning the boys caught a bus to Memphis. Upon their arrival in Memphis, Barnett went home. Defendants went to their homes, and then went to town to see a picture show.

The only name Gowan could remember was that of ''Curt''. Upon inquiry from officers in the neighborhood the officers investigating the case ascertained that reference was probably made to Curtis Freshour, and upon inquiry he told the officers the names of the other boys who had been with Gowan. Barnett admitted his participation in the robbery, in the presence of his mother and stepfather. He turned over to the officers the $9.50 he had received, a cigarette lighter, dark

glasses, and the wedding band. About noon defendants returned from town and were advised by English's fiancee that the officers were looking for them. English told his fiancee that he did not remember anything that happened after they got into Gowan's car. The girl drove them to the police station. Defendants both denied any participation in the robbery until Thursday morning, when Lieutenant Meek went to work at 7:30. Witham sent for Lieutenant Meek and told him where they had disposed of the watch. Witham then got in a squad car with Lieutenant Meek and another officer and directed them out to Broad and Hollywood, to a storm sewer at the corner, about ten feet deep, and an employee of the City Sanitary Department got the watch out of the storm sewer. Defendants testified that when they got off the bus in Memphis on Sunday morning, Barnett threw the watch in the sewer. The State's evidence is that when the officers returned with Witham and the watch, English said, ''We may as well tell him about it.'' A short time thereafter, confessions were obtained and signed by each of the three boys.

The testimony of the officers, corroborated by Mr. and Mrs. Gowan, is that the boys were advised as to their constitutional rights, and that the confessions were made freely and voluntarily, without any threats or promises of reward or leniency. The State's evidence is that Witham declined to give a confession prior to that time because he said, ''I can't cut fifteen years.'' Defendants testified, out of the presence of the jury, that they were threatened with prosecution for assault with intent to kill, as well as robbery, and punishment of five to fifteen years, if they did not confess. The State's witnesses deny this. After hearing all the evidence as

to their competency, the trial court admitted all three of the confessions in evidence.

Error is assigned to the action of the trial court in denying the request of counsel for defendants for the right to examine the confessions before they were admitted in evidence. "However, in criminal cases, it is very evident that the accused cannot compel the prosecution to produce documents which he himself has made. Thus, he is not entitled to have incriminating letters, written by him, produced for his inspection; nor to have produced a statement made and signed by him even on the ground that such statement is material to his defense. As to evidence in the possession of the prosecution, the general rule is that the accused has no right to inspection or disclosure of the same." Wharton's Criminal Evidence, 11th Ed., Vol. 2, Section 785, p. 1354.

The trial court followed the approved procedure for determining the admissibility of the confessions:

"In *Self* v. *State* [65 Tenn. 244] the Court said:

" 'When confessions are offered as evidence, their competency becomes a preliminary question, to be determined by the court. This imposes upon the presiding judge the duty of deciding the fact whether the party making the confession was influenced by hope or fear. This rule is so well established, that if the judge allow the jury to determine the preliminary fact, it is error, for which the judgment will be reversed: *Boyd* v. *State,* 2 Humph. 39. These are elementary principles too long established and followed to be now questioned.' (Page 253 of 65 Tenn.)" *Wynn* v. *State,* 181 Tenn. 325, 181 S. W. (2d) 332, 333; *Steele* v. *State,* 189 Tenn. 424, 225 S. W. (2d) 260.

█ In the present case, as in the Wynn case, defendants were examined three or four times at intervals. There was no continuous grilling, and we find no evidence of mistreatment while defendants were held in custody.

█ █ It is true that the convictions cannot be sustained upon the basis of these confessions, without some corroboration. *Ashby* v. *State,* 124 Tenn. 684, 697, 139 S. W. 872; *Chadwick* v. *State,* 189 Tenn. 256, 225 S. W. (2d) 52. In corroboration of the confessions, we have the testimony of Gowan, the recovery of the stolen property, including the watch, and other evidence pointing to the guilt of defendants. Then, too, as above stated, defendants did not see proper to introduce Freshour as a witness as to the alleged difficulty between him and Gowan.

█ █ It is also true that the convictions cannot be sustained upon the uncorroborated testimony of Barnett, an accomplice. The sufficiency of evidence required to corroborate an accomplice is well set forth in *Clapp* v. *State,* 94 Tenn. 186, 30 S. W. 214, as well as in the later cases of *Stanley* v. *State,* 189 Tenn. 110, 222 S. W. (2d) 384, and *Alexander* v. *State,* 190 Tenn. 260, 229 S. W. (2d) 331. The confessions were admissible in evidence to corroborate the testimony of the accomplice which, in turn and to the same extent, corroborates the confessions.

█ We have examined the other assignments of error and find them without merit. The proof shows conclusively that defendants are guilty, and the judgment of the lower court is, therefore, affirmed.

All concur.