# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
May 28, 2015 Session[1]


# THE TENNESSEAN ET AL. v. METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY ET AL.


### Appeal by Permission from the Court of Appeals, Middle Section
### Chancery Court for Davidson County
### No. 14156IV    Russell T. Perkins, Chancellor

_____

### No. M2014-00524-SC-R11-CV  - Filed March 17, 2016
_____


The issue in this case is whether a coalition of media groups and a citizens organization, relying on the Tennessee Public Records Act, have the right to inspect a police department's criminal investigative file while the criminal cases arising out of the investigation are ongoing.  Four Vanderbilt University football players were indicted for aggravated rape and other criminal charges arising out of the alleged rape of a university student in a campus dormitory.  Following the indictments, the Petitioners, a group of media organizations and a citizens group, made a Public Records Act request to inspect the police department's files regarding its investigation of the alleged criminal conduct by the football players.  The request was denied.  We hold that the Public Records Act allows access to government records, but there are numerous statutory exceptions, including a state law exception in Tennessee Code Annotated section 10-7-503(a)(2), that shield some records from disclosure.  Rule 16 of the Tennessee Rules of Criminal Procedure falls within the state law exception.  Rule 16 provides for the release of certain information to the defendant in a criminal case, but does not authorize the release of any information to a nonparty to the case.  Therefore, during the pendency of the criminal case and any collateral challenges to any conviction, Rule 16 governs the disclosure of information and only the defendant has the right to receive certain information.  We hold that, based on Rule 16, the Petitioners have no right to the requested information during the pendency of the criminal cases and any collateral challenges.  Jane Doe, the victim of the alleged criminal acts, intervened in this action to prevent disclosure of the investigative file, and particularly photographs and video images of the alleged assault.  Based on our ruling today, these records are protected from disclosure until the conclusion of the criminal cases and all collateral challenges.  At the conclusion of the

---

[1] Oral argument was heard on the campus of Lipscomb University in Nashville, Tennessee, as part of the American Legion Auxiliary's Volunteer Girls State S.C.A.L.E.S. (**S**upreme **C**ourt **A**dvancing **L**egal **E**ducation) project.

criminal cases and following any guilty plea or conviction and sentencing, Tennessee Code Annotated section 10-7-504(q)(1) applies to block the release of Ms. Doe's personal information and any photographic or video depiction of her. This requires no action on the part of Ms. Doe and no further court proceedings.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals Affirmed**

SHARON G. LEE, C.J., delivered the opinion of the Court, in which CORNELIA A. CLARK, JEFFREY S. BIVINS, and HOLLY KIRBY, JJ., joined. HOLLY KIRBY, J., filed a separate concurring opinion. GARY R. WADE, J., filed a dissenting opinion.

Robb S. Harvey and Lauran M. Sturm, Nashville, Tennessee, for the appellants, *The Tennessean*, Associated Press, *Chattanooga Times Free Press*, *Knoxville News Sentinel*, Tennessee Associated Press Broadcasters, Tennessee Coalition for Open Government, Inc., *The Commercial Appeal*, WBIR-TV Channel Ten, WSMV-TV Channel Four, WTVF-TV, News Channel 5 Network, LLC, and WZTV Fox 17.

Saul Solomon, James L. Charles, Lora Barkenbus Fox, R. Alex Dickerson, Jennifer Cavanaugh, and Jennifer Bonilla Moreno, Nashville, Tennessee, for the appellee, Metropolitan Government of Nashville and Davidson County.

Edward M. Yarbrough and J. Alex Little, Nashville, Tennessee, for the intervenor/appellee, Jane Doe.

Herbert H. Slatery III, Attorney General and Reporter; Andrée S. Blumstein, Solicitor General; and Janet M. Kleinfelter, Deputy Attorney General, for the intervenors/appellees, District Attorney General Glenn R. Funk and the State of Tennessee.

Richard L. Hollow, Knoxville, Tennessee, for the Amicus Curiae, Tennessee Press Association.

Douglas R. Pierce, Nashville, Tennessee, for the Amici Curiae, The Reporters Committee for Freedom of the Press, Tennessee Association of Broadcasters, Thomas Jefferson Center for the Protection of Free Expression, and The University of Virginia School of Law First Amendment Clinic.

Devin P. Lyon, Knoxville, Tennessee, for the Amici Curiae, Tennessee Municipal Attorneys Association and International Municipal Lawyers Association.

Edmund S. Sauer, Kristi W. Arth, Connor M. Blair, and Jessica Jernigan-Johnson, Nashville, Tennessee, for the Amici Curiae, National Sexual Violence Resource Center,

The Tennessee Coalition to End Domestic and Sexual Violence, The National Crime Victim Law Institute, and the Sexual Assault Center.

Daniel A. Horwitz, Nashville, Tennessee, for the Amicus Curiae, Domestic and Sexual Violence Prevention Advocates.

## OPINION

### I. Factual and Procedural Background

Beginning in late June of 2013, the Metropolitan Government of Nashville and Davidson County Police Department ("Metro" or "Metro Police") investigated the rape of a university student that allegedly occurred in a Vanderbilt University dormitory during the early morning hours of June 23, 2013. In August of 2013, the Davidson County Grand Jury indicted Brandon Banks, Cory Batey, Jaborian McKenzie, and Brandon Vandenburg—all members of the Vanderbilt University football team—with five counts each of aggravated rape and two counts of aggravated sexual battery. Vandenburg was also charged with unlawful photography and tampering with evidence. The four men pleaded not guilty. In August of 2013, another Vanderbilt University football player, Chris Boyd, pleaded guilty to a related charge of accessory after the fact. On October 2, 2013, the Criminal Court for Davidson County issued an agreed protective order, providing that all photographs and videos provided in discovery by the State would be disseminated only to counsel for the defendants.

On October 17, 2013, Brian Haas, a reporter for Nashville newspaper *The Tennessean*, made a public records request to the Metro Police, asking to inspect any records regarding the alleged rape on the Vanderbilt University campus in which Vandenburg, Banks, Batey, McKenzie, and Boyd were charged. The request specifically included any text messages received or sent and videos provided and/or prepared by any third party sources. On October 23, 2013, Metro denied the request, contending that the records sought were part of an open criminal investigation or pending prosecution pertaining to the rape cases and, therefore, were exempt from public disclosure under Tennessee Rule of Criminal Procedure 16(a)(2). *The Tennessean* later clarified its request to state that it had no intention of publishing before trial the alleged victim's name without her permission and was not requesting any photographs or videos taken by any of the defendants during the alleged assault. Meanwhile, the Associated Press, the *Chattanooga Times Free Press*, the *Knoxville News Sentinel*, the Tennessee Associated Press Broadcasters, *The Commercial Appeal*, WBIR-TV Channel Ten, WSMV-TV Channel Four, WTVF-TV, News Channel 5 Network, LLC, WZTV Fox 17, and the Tennessee Coalition for Open Government, Inc. joined *The Tennessean* in its request for the records.

On February 5, 2014, *The Tennessean,* the other requesting news organizations, and the Tennessee Coalition for Open Government, Inc. ("the Petitioners") filed a petition against Metro in the Chancery Court for Davidson County seeking access to the requested records under the Tennessee Public Records Act, Tennessee Code Annotated sections 10-7-501 through 10-7-516 (2014). The Chancery Court granted the motions to intervene filed by the victim of the alleged rape, identified as "Jane Doe," and the Tennessee Attorney General, on behalf of both the State and the District Attorney General for Davidson County (collectively, the "State").

The State and Metro argued that all of the requested records were exempt from disclosure under Rule 16(a)(2); that many of the records were covered by the Criminal Court's October 2, 2013 protective order; and that disclosure of the records would adversely affect the Criminal Court's ability to ensure a fair trial. In addition, Metro challenged the jurisdiction of the Chancery Court, contending that exclusive jurisdiction rested with the Criminal Court. Ms. Doe argued that public disclosure of the records would contravene her rights guaranteed by article I, section 35 of the Tennessee Constitution[2] and by the Victims' Bill of Rights, Tennessee Code Annotated sections 40-38-101 through 40-38-117 (2014).[3]

By an order entered on March 12, 2014, the Chancery Court reaffirmed its previous ruling that it had jurisdiction to decide the case. After an *in camera* inspection of the requested records, the Chancery Court categorized the requested records:

> 1. Building surveillance tapes, with the victim's image redacted, from three locations on the Vanderbilt University campus, including the dormitory where the alleged rapes occurred;

> 2. Videos and photographs, except for photographs or videotapes of the alleged rapes or any photos or videotapes of the victim;

---

[2] In 1998, the Tennessee Constitution was amended to guarantee that victims of crime have the right to confer with the prosecution; the right to be free from intimidation, harassment, and abuse throughout the criminal justice system; the right to be present at all proceedings where the defendant has the right to be present; the right to be heard, when relevant, at all critical stages of the criminal justice process as defined by the General Assembly; the right to be informed of all proceedings, and of the release, transfer, or escape of the accused or convicted person; the right to a speedy trial or disposition and a prompt and final conclusion of the case after the conviction or sentence; the right to restitution from the offender; and the right to be informed of each of the rights established for victims. *See* Tenn. Const. art. I, § 35.

[3] The Victims' Bill of Rights, Tennessee Code Annotated section 40-38-102, provides that the rights of victims of crimes include the right to be treated with dignity and compassion; have protection and support with prompt action in the case of intimidation or retaliation from the defendant and the defendant's agents or friends; and collect court-ordered restitution in the same manner as a civil judgment, as authorized pursuant to Tennessee Code Annotated sections 37-1-131(b)(2) or 40-35-304(h).

3. Text messages and e-mails received from third parties by Metro Police in the course of its investigation;

4. Written statements of the defendants and witnesses provided by Vanderbilt University to Metro Police;

5. Vanderbilt University access card information;

6. Reports and e-mails provided by Vanderbilt University to Metro Police;

7. Forensic tests performed on telephones and computers by Metro Police;

8. Tennessee Bureau of Investigation DNA reports;

9. Forensic reports prepared by private laboratories hired by Metro Police; and

10. These items made or collected by Metro Police:

> a) police reports and supplements;
> b) search warrants;
> c) crime scene photographs;
> d) Pano-scan data relating to Vanderbilt University premises;[4]
> e) background checks and other personal information regarding the victim, defendants, and witnesses;
> f) cell phone information obtained through several search warrants;
> g) photographic images and text messages recovered from the cell phones of the five individuals charged with criminal offenses, except any photographs or video depicting the victim or the alleged sexual assault;
> h) statements of the victim, defendants, and witnesses; and
> i) video recovered from a student witness's computer, except any photographs or videotapes depicting the victim or the alleged sexual assault.

Following a hearing, the Chancery Court ruled that records not developed internally and not constituting statements or other documents reflecting the reconstructive and investigative efforts of Metro Police, but submitted to Metro Police, were public records and not protected from disclosure by Rule 16(a)(2). The Chancery Court allowed the Petitioners to inspect the text messages sent by third parties to Metro Police, except for any photographic or videographic images of the victim, her name, or any identifying

---

[4] "Pano-scan" is a type of panoramic photographic surveillance.

information; the Vanderbilt University access card information; the Pano-scan data relating to Vanderbilt University premises; and e-mails recovered from potential witnesses and the criminal defendants not addressed to officials related to Metro Police or the District Attorney General's Office. The Chancery Court declined to allow all other records to be disclosed based on Rule 16(a)(2). The Chancery Court deferred to the Criminal Court as to the application of the October 2, 2013 agreed protective order, the protection of the constitutional rights of the defendants in the criminal case, and the protection of the privacy and dignity of Ms. Doe under the Victims' Bill of Rights. The trial court stayed its order allowing disclosure pending appeal.

In a divided opinion, the Court of Appeals reversed, holding that all of the requested materials were relevant to a pending or contemplated criminal action and were therefore exempt from public disclosure under Rule 16(a)(2). *Tennessean v. Metro. Gov't of Nashville & Davidson Cnty.*, No. M2014-00524-COA-R3-CV, 2014 WL 4923162, at *4 (Tenn. Ct. App. Sept. 30, 2014). We granted the Petitioners' application for permission to appeal.

While this appeal has been pending, the criminal prosecutions of the Vanderbilt University football players have proceeded. On June 24, 2014, the Criminal Court issued an order placing the following information under seal: (1) personal identifying information of the victim, including her name, contact details, and photographs; (2) the medical records of all witnesses, including the victim; and (3) other confidential records, such as records pertaining to any witness's education, finances, or employment. On July 7, 2014, the Criminal Court entered a protective order directing that all future filings be sealed pending court review for a determination of release. On January 27, 2015, a jury convicted Batey and Vandenburg on all charges. The next day, the Criminal Court entered a protective order placing under seal all evidence introduced at trial. Upon motion by the State, these protective orders were made a part of the record in this appeal as post-judgment facts. *See* Tenn. R. App. P. 14(b). On June 23, 2015, the Criminal Court granted a new trial to Batey and Vandenburg based on a finding of juror misconduct.[5]

## II. Analysis

Because there are no factual disputes, the outcome of this case depends on our interpretation of the Tennessee Public Records Act and Tennessee Rule of Criminal Procedure 16 and the application of these laws to the facts of this case. The issues before us are questions of law which we review de novo without affording a presumption of

---

[5] Information pertaining to the conviction and grant of a new trial is not included in the appellate record; however, this Court may take judicial notice of the records of the courts of this state. *See* 29 Am. Jur. 2d *Evidence* § 150 (2015); *see also* Tenn. R. Evid. 201; *State v. Lawson*, 291 S.W.3d 864, 868-69 (Tenn. 2009).

correctness to the trial court's decision. *State v. Hatcher*, 310 S.W.3d 788, 799 (Tenn. 2010) (citing *State v. Ferrante*, 269 S.W.3d 908, 911 (Tenn. 2008)); *Memphis Publ'g Co. v. Cherokee Children & Family Servs., Inc.*, 87 S.W.3d 67, 74 (Tenn. 2002) (citing *Gleaves v. Checker Cab Transit Corp.*, 15 S.W.3d 799, 802–03 (Tenn. 2000); *Ridings v. Ralph M. Parsons Co.*, 914 S.W.2d 79, 80 (Tenn. 1996)). When interpreting statutes, we must determine and give effect to the Legislature's intent in adopting the statute without adding or taking away from its intended meaning or application. *Perrin v. Gaylord Entm't Co.*, 120 S.W.3d 823, 826 (Tenn. 2003) (citing *Parks v. Tenn. Mun. League Risk Mgmt. Pool*, 974 S.W.2d 677, 679 (Tenn. 1998)).

## A. Subject Matter Jurisdiction

First, we must decide whether the Chancery Court had subject matter jurisdiction to decide the case. *See In re Estate of Trigg*, 368 S.W.3d 483, 489 (Tenn. 2012) ("[I]ssues regarding a court's subject matter jurisdiction should be considered as a threshold inquiry . . . and should be resolved at the earliest possible opportunity." (internal citation omitted)). Metro contends that the Chancery Court cannot exercise jurisdiction in this case because by the time this public records case was filed in Chancery Court, the Criminal Court was already exercising its jurisdiction and ruling on Rule 16 discovery issues. The Petitioners respond that the Chancery Court properly exercised subject matter jurisdiction.

Subject matter jurisdiction is conferred on a court by statute or by the state or federal constitution. *Id.* (citing *Osborn v. Marr*, 127 S.W.3d 737, 739 (Tenn. 2004); *Meighan v. U.S. Sprint Commc'ns Co.*, 924 S.W.2d 632, 639 (Tenn. 1996); *Walker v. White*, 89 S.W.3d 573, 577 (Tenn. Ct. App. 2002)). The subject matter jurisdiction of a court "refers to a court's authority to adjudicate a particular case or controversy and 'depends on the nature of the cause of action and the relief sought.'" *In re Baby*, 447 S.W.3d 807, 837 (Tenn. 2014) (quoting *Chapman v. DaVita, Inc.*, 380 S.W.3d 710, 712 (Tenn. 2012)). The Petitioners, as the parties who filed this action, must prove that the Chancery Court has jurisdiction to adjudicate the claim. *Redwing v. Catholic Bishop for the Diocese of Memphis*, 363 S.W.3d 436, 445 (Tenn. 2012).

The following language of the Public Records Act confers jurisdiction on the Chancery Court: "[A petition for judicial review of a public records request] shall be filed in the *chancery court* or circuit court for the county *in which the county or municipal records sought are situated*, or in any other court of that county having equity jurisdiction." Tenn. Code Ann. § 10-7-505(b) (emphasis added).

The plain language of this statute confers jurisdiction on the Chancery Court to adjudicate requests under the Public Records Act and does not condition its jurisdiction on whether a criminal court may also consider issues regarding the requested records. Moreover, the Public Records Act does not limit a criminal court's authority under Rule

16(d) to issue protective orders or use other means to protect the rights of a defendant to a fair trial. A citizens or media organization may still intervene in a criminal action to challenge the terms of a protective order blocking access to court records or proceedings. *See Knoxville News-Sentinel v. Huskey*, 982 S.W.2d 359, 362 (Tenn. Crim. App. 1998). Metro cites several cases in support of its position, but we find none of these cases to be on point or helpful to Metro's position. We conclude that the Chancery Court properly exercised jurisdiction in this matter.

## B. Public Records Act

For more than a century, Tennessee courts have recognized the public's right to inspect governmental records. *See, e.g.*, *State ex rel. Wellford v. Williams*, 75 S.W. 948, 959 (Tenn. 1903) (holding that Memphis residents concerned about the city's financial condition had the right to inspect the city's records). In 1957, the General Assembly codified this right of public access by enacting the state's first public records statutes. *See Swift v. Campbell*, 159 S.W.3d 565, 571 (Tenn. Ct. App. 2004) (citing *Ballard v. Herzke*, 924 S.W.2d 652, 661 (Tenn. 1996)). The Public Records Act has been amended over the years, but its intent has remained the same—to facilitate the public's access to government records. *Swift*, 159 S.W.3d at 571 (citing *Cherokee Children & Family Servs., Inc.*, 87 S.W.3d at 74; *Memphis Publ'g Co. v. City of Memphis*, 871 S.W.2d 681, 687-88 (Tenn. 1994)); *see also Cole v. Campbell,* 968 S.W.2d 274, 275 (Tenn. 1998) (noting that "[t]his Court has upheld this legislative mandate on numerous occasions"). The Public Records Act has a noble and worthwhile purpose by providing a tool to hold government officials and agencies accountable to the citizens of Tennessee through oversight in government activities.

Public records under the Act are defined broadly to include "all documents, papers, letters, maps, books, photographs, microfilms, electronic data processing files and output, films, sound recordings or other material, regardless of physical form or characteristics, made or received pursuant to law or ordinance or in connection with the transaction of official business by any governmental agency."[6]

To facilitate access to the records, the Public Records Act requires that "all state, county and municipal records shall, at all times during business hours . . . be open for personal inspection by any citizen of this state, and those in charge of the records shall not refuse such right of inspection to any citizen, *unless otherwise provided by state law*."[7]

___

[6] Tenn. Code Ann. § 10-7-503(a)(1)(A); s*ee also Griffin v. City of Knoxville*, 821 S.W.2d 921, 923 (Tenn. 1991) (characterizing the Public Records Act as "an all[-]encompassing legislative attempt to cover all printed matter created or received by government in its official capacity" (quoting *Bd. of Educ. v. Memphis Publ'g Co.*, 585 S.W.2d 629, 630 (Tenn. Ct. App. 1979))).

[7] Tenn. Code Ann. § 10-7-503(a)(2)(A) (emphasis added).

There is a presumption of openness for government records. *Memphis Publ'g Co.*, 871 S.W.2d at 684. Custodians of the records are directed to promptly provide for inspection any public record not exempt from disclosure.[8] The Public Records Act directs the courts to broadly construe the Act "so as to give the fullest possible access to public records."[9] The Act allows a person whose request for public records is denied to file suit and seek judicial review of the governmental entity's denial.[10] The governmental entity must prove justification for nondisclosure by a preponderance of the evidence.[11] The trial court has the discretion to award costs and attorney fees when the court determines that the governmental entity that denied access to a public record knew that the record was a public record and willfully refused to disclose it.[12]

The Public Records Act, however, is not absolute, as there are numerous statutory exceptions to disclosure.[13] When the Act was adopted in 1957, only two categories of records were excepted from disclosure—medical records of patients in state hospitals and military records involving the security of the nation and state.[14] However, over the years, the General Assembly has added over forty categories of records specifically excepted from the Act.[15] The once all-encompassing Public Records Act is now more narrow. Some exceptions specifically added to the Act include investigative records of the Tennessee Bureau of Investigation; records of students at public educational institutions; materials in the possession of the office of Attorney General and Reporter that relate to any pending or contemplated legal or administrative matter; state agency records containing opinions of real and personal property values intended to be acquired for a public purpose until the finalization of the acquisition; proposals received under personal service, professional service, and consultant service contract regulations until the completion of evaluation of same by the state; sealed bids for the purchase of goods and services, leases of real property, and individual purchase records until after the

---

[8] *Id.* § 10-7-503(2)(B).

[9] *Id.* § 10-7-505(d).

[10] Tenn. Code Ann. § 10-7-505(b).

[11] *Id.* § 10-7-505(c).

[12] *Id.* § 10-7-505(g); *see also Patterson v. Convention Ctr. Auth. of Metro. Gov't of Nashville & Davidson Cnty.*, 421 S.W.3d 597, 616 (Tenn. Ct. App. 2013); *Allen v. Day*, 213 S.W.3d 244, 262 (Tenn. Ct. App. 2006) (citing *Cherokee Children & Family Servs., Inc.*, 87 S.W.3d at 80).

[13] Tenn. Code Ann. §§ 10-7-503(a)(2)(A), -503(d)-(e), -504.

[14] Act of Mar. 18, 1957, ch. 285, 1957 Tenn. Pub. Acts 932.

[15] Tenn. Code Ann. §§ 10-7-503(d)-(e), -504.

completion of their evaluation of the state; investigative records and reports of the internal affairs division of the department of correction or of the department of children's services; official health certificates collected and maintained by the state veterinarian; records provided to or collected by the department of agriculture under the implementation and operation of premise identification or animal tracking programs; records of historical research value given or sold to public archival institutions, public libraries, or libraries within the Tennessee Board of Regents or the University of Tennessee, when the owner or donor of such records wishes to place restrictions on access to the records; personal information in motor vehicle records; and all riot, escape, and emergency transport plans of county jails and workhouses or prisons.[16]   In the criminal arena, where a defendant has plead guilty to, or has been convicted of, and has been sentenced for a sexual offense or violent sexual offense specified in Tennessee Code Annotated section 40-39-202, the victim's name, identifying information and any photographic or video depiction of the victim shall remain confidential unless waived by the victim.[17]

In addition, the Legislature provided for a general exception to the Public Records Act, based on state law.  Tennessee Code Annotated section 10-7-503(a)(2)(A) provides that governmental records shall be open for inspection and that the right of inspection shall not be denied "unless otherwise provided by state law."  "State law" includes statutes, the Tennessee Constitution, the common law, rules of court, and administrative rules and regulations.  *Swift*, 159 S.W.3d at 571-72 (citing *Tenn. Small Sch. Sys. v. McWherter*, 851 S.W.2d 139, 148 (Tenn. 1993); *Frye v. Blue Ridge Neuroscience Ctr., P.C.*, 70 S.W.3d 710, 713 (Tenn. 2002); *Emery v. S. Ry.*, 866 S.W.2d 557, 561 (Tenn. Ct. App. 1993); *Kogan v. Tenn. Bd. of Dentistry*, No. M2003-00291-COA-R3-CV, 2003 WL 23093863, at *5-6 (Tenn. Ct. App. Dec. 30, 2003)).  The Tennessee Rules of Criminal Procedure, including Rule 16, are "state law" and are encompassed within this exception.  *Ballard*, 924 S.W.2d at 662.

Petitioners assert that Rule 16(a)(2) exempts from disclosure only materials that were "'*made by* . . . law enforcement officers in connection with investigating or prosecuting the case' or constitute 'statements made by state witness or prospective state witnesses.'"  According to the Petitioners, Rule 16(a)(2) does not protect records created by third parties and then provided to or gathered by law enforcement officials, as these records do not come within the work product exception.  Petitioners argue that interpreting Rule 16(a)(2) as a blanket exception to disclosure under the Public Records Act for public records that are "relevant to a pending or contemplated criminal action," is in effect, the adoption of a common law law enforcement privilege that this Court rejected in *Schneider v. City of Jackson*.  226 S.W.3d 332, 348 (Tenn. 2007).

---

[16] *Id.* § 10-7-504(a)(2)(A), (a)(4)(A), (a)(5)(A), (a)(6)-(8), (a)(9)(A)-(B), (a)(11)-(12), (a)(14).

[17] *Id.* § 10-7-504(q).

The State and Metro assert that none of the requested materials are subject to disclosure under the Public Records Act because Rule 16(a)(2) functions as an exception to disclosure for all public records that are "relevant to a pending or contemplated criminal action," regardless of whether the requested materials were "made by . . . law enforcement officers in connection with investigating or prosecuting the case," amount to statements of "state witnesses or prospective state witnesses" or were collected by law enforcement officials from third parties. Metro further argues that Rule 16 limits the disclosure of discovery materials in a criminal proceeding to the parties in the proceeding and provides third parties no right to disclosure of discovery materials during an open criminal proceeding.

## C. Tennessee Rule of Criminal Procedure 16

Since 1978, the Tennessee Rules of Criminal Procedure have governed the procedure in all trial court criminal proceedings.[18] Rule 16 provides for the disclosure of information by the State or the defendant. Rule 16 does not provide for the release of any information to anyone not a party to the criminal proceeding.

Rule 16(a)(1) lists the materials that the State must disclose to a defendant who requests discovery.[19] These items generally include the defendant's oral statements; the

---

[18] Before 1963, criminal defendants had no right to discovery because discovery did not exist at common law, and Tennessee had no discovery procedures. *State v. Dougherty*, 483 S.W.2d 90, 92 (Tenn. 1972); *Witham v. State*, 232 S.W.2d 3, 4 (Tenn. 1950); *Bass v. State*, 231 S.W.2d 707, 712 (Tenn. 1950); *see generally* 9 Tenn. Prac. Crim. Prac. & Procedure § 13:1. In 1963, a criminal defendant was afforded a statutory right to see his own confession. Act of Feb. 27, 1963, ch. 96 §§ 1-2, 1963 Tenn. Pub. Acts 579, repealed by Act of May 17, 1979, ch. 399 § 1, 1979 Tenn. Pub. Acts 1002. In 1968, another statute was enacted affording a criminal defendant discovery of certain physical evidence held by the prosecution. Act of Feb. 29, 1968, ch. 415 § 1, 1968 Tenn. Pub. Acts 29, repealed by Act of May 17, 1979, ch. 399 § 1, 1979 Tenn. Pub. Acts 1002. The Tennessee Rules of Criminal Procedure became effective on July 13, 1978. *See* Tenn. R. Crim. P. 59, Advisory Comm'n Comments. Tennessee Rule of Criminal Procedure 1(a) provides that the rules apply to criminal proceedings in all courts of record.

[19] Rule 16(a)(1) provides:

(a) Disclosure of Evidence by the State.
    (1) *Information Subject to Disclosure*.
        (A) Defendant's Oral Statement. Upon a defendant's request, the state shall disclose to the defendant the substance of any of the defendant's oral statements made before or after arrest in response to interrogation by any person the defendant knew was a law-enforcement officer if the state intends to offer the statement in evidence at the trial;
        (B) Defendant's Written or Recorded Statement. Upon a defendant's request, the state shall disclose to the defendant, and make available for inspection, copying, or photographing, all of the following:
            (i) the defendant's relevant written or recorded statements, or copies thereof, if:

defendant's written or recorded statements; the defendant's prior criminal record; any books, papers, documents, photographs, tangible objects, buildings, or places, if within the state's possession, custody, or control that are material to preparing the defense, that the state intends to use in its case-in-chief at trial, or if obtained from or belongs to the defendant; and any reports of physical or mental examinations and scientific tests or experiments if they are within the state's possession or control, the state intends to use them in its case-in-chief at trial, or if material to preparing the defense.

---

        (I) the statement is within the state's possession, custody, or control; and

        (II) the district attorney general knows--or through due diligence could know--that the statement exists; and

    (ii) the defendant's recorded grand jury testimony which relates to the offense charged.

. . . .

(D) Codefendants.  Upon a defendant's request, when the state decides to place codefendants on trial jointly, the state shall promptly furnish each defendant who has moved for discovery under this subdivision with all information discoverable under Rule 16(a)(1)(A), (B), and (C) as to each codefendant.

(E) Defendant's Prior Record.  Upon a defendant's request, the state shall furnish the defendant with a copy of the defendant's prior criminal record, if any, that is within the state's possession, custody, or control if the district attorney general knows--or through due diligence could know--that the record exists.

(F) Documents and Objects.  Upon a defendant's request, the state shall permit the defendant to inspect and copy or photograph books, papers, documents, photographs, tangible objects, buildings, or places, or copies or portions thereof, if the item is within the state's possession, custody, or control and:

    (i) the item is material to preparing the defense;

    (ii) the government intends to use the item in its case-in-chief at trial; or

    (iii) the item was obtained from or belongs to the defendant.

(G) Reports of Examinations and Tests.  Upon a defendant's request, the state shall permit the defendant to inspect and copy or photograph the results or reports of physical or mental examinations, and of scientific tests or experiments if:

    (i) the item is within the state's possession, custody, or control;

    (ii) the district attorney general knows--or through due diligence could know--that the item exists; and

    (iii) the item is material to preparing the defense or the state intends to use the item in its case-in-chief at trial.

Rule 16(a)(2) provides that these materials are not subject to disclosure:

Except as provided in paragraphs (A), (B), (E), and (G) of subdivision (a)(1), this rule does not authorize the discovery or inspection of reports, memoranda, or other internal state documents made by the district attorney general or other state agents or law enforcement officers in connection with investigating or prosecuting the case. Nor does this rule authorize discovery of statements made by state witnesses or prospective state witnesses.

Tenn. R. Crim. P. 16(a)(2).

Rule 16(b) specifies the information that the defendant must disclose to the State.[20] It generally includes documents, items, and reports of examinations and tests within the defendant's possession or control that the defendant plans to introduce at trial.

---

[20] Rule 16(b) provides:

(b) Disclosure of Evidence by the Defendant.
    (1) *Information Subject to Disclosure*.
        (A) Documents and Tangible Objects. If a defendant requests disclosure under subdivision (a)(1)(F) or (G) of this rule and the state complies, then the defendant shall permit the state, on request, to inspect and copy or photograph books, papers, documents, photographs, tangible objects, or copies or portions of these items if:
            (i) the item is within the defendant's possession, custody, or control; and
            (ii) the defendant intends to introduce the item as evidence in the defendant's case-in-chief at trial.
        (B) Reports of Examinations and Tests. If the defendant requests disclosure under subdivision (a)(1)(F) or (G) of this rule and the state complies, the defendant shall permit the state, on request, to inspect and copy or photograph any results or reports of physical or mental examinations and of scientific tests or experiments made in connection with the particular case, or copies thereof, if:
            (i) the item is within the defendant's possession, custody, or control; and
            (ii) the defendant intends to introduce the item as evidence in the defendant's case-in-chief at trial; or
            (iii) the defendant intends to call as a witness at trial the person who prepared the report, and the results or reports relate to the witness's testimony.
    (2) *Information Not Subject to Disclosure*. Except as to scientific or medical reports, this subdivision does not authorize the discovery or inspection of:
        (A) reports, memoranda, or other internal defense documents made by the defendant or the defendant's attorneys or agents in connection with the investigation or defense of the case; or

Prior decisions interpreting Rule 16 and the Public Records Act have focused either on records not subject to disclosure to a defendant or the defendant's attorneys or the temporal scope of this provision as it relates to disclosure to nonparties.

In *Memphis Publishing Co. v. Holt*, 710 S.W.2d 513, 515 (Tenn. 1986), this Court considered whether a closed investigative file of the Memphis Police Department was available for inspection by the media and the public under the Public Records Act. The Police Department argued, in part, that Rule 16 protected the records from disclosure. *Id.* at 517. We held that because the police department's investigative file was a closed file and was not relevant to any pending or contemplated criminal action, Rule 16 was not applicable and the investigative file was subject to disclosure. *Id.*

The following year, in *Appman v. Worthington*, 746 S.W.2d 165, 165 (Tenn. 1987), we were presented with the issue of whether the investigative records regarding the death of an inmate at a state correctional facility were available for inspection under the Public Records Act to the defendants charged with the inmate's murder. Several defendants, including Nicholas Todd Sutton, were indicted for the inmate's murder. *Id.* David W. Stufflestreet was indicted as an accessory after the fact. *Id.* Counsel for defendants Sutton and Stufflestreet had a subpoena issued directing that all records in the possession of the correctional facility regarding the inmate's death be produced under the Public Records Act. *Id.* at 165-66. After the State refused the request, the defendants and their counsel filed a chancery court public records action to obtain the investigative records. *Id.* at 166. The chancery court held that Rule 16 excepted the documents from disclosure. *Id.* The Court of Appeals disagreed and reversed the trial court. In reversing the Court of Appeals, we held that the Tennessee Rules of Criminal Procedure carry the force of law and therefore constituted an exception to the Public Records Act. *Id.* at 166. Further, we held that the requested records were the product of the investigation by the Internal Affairs of the Department of Corrections and related to the prosecution of the murder cases against Sutton and Stufflestreet and the other defendants in the criminal cases arising out of the inmate's murder. *Id.* at 167. The criminal cases were ongoing; therefore, the records, under Rule 16(a)(2), were not subject to inspection by counsel for the defendants in the murder cases. *Id.* at 167.[21]

---

(B) a statement made by the defendant to the defendant's agents or attorneys or statements by actual or prospective state or defense witnesses made to the defendant or the defendant's agents or attorneys.

. . . .

[21] Effective December 11, 1985, the General Assembly amended Tennessee Code Annotated section 10-7-504(a) to provide an exception for internal investigative records and reports of the Tennessee Department of Corrections. Act of Dec. 5, 1985, ch. 5 § 29, 1985 (1st Ex. Sess.) Tenn. Pub. Acts 34. The public records request in *Appman* was made on June 2, 1985, so it predated the effective date of the exception.

Subsequently in *Ballard*, we addressed the issue of whether a protective order shields from disclosure under the Public Records Act discovery responses filed with the clerk of a court in a civil proceeding. 924 S.W.2d at 662. *The Tennessean* and the Society of Professional Journalists intervened in a civil suit between residents and owners and operators of a life care center. *Id.* at 656. The intervenors requested that the trial court rescind a blanket protective order that sealed discovery documents filed in the case because the documents were public records. *Id.* Noting this Court's holding in *Appman* that the Tennessee Rules of Criminal Procedure are encompassed within the "state law" exception to the Public Records Act, this Court held the same reasoning applied to the Tennessee Rules of Civil Procedure. *Id.* at 662.[22] We held that the Public Records Act did not require disclosure of records sealed by a protective order entered under Tennessee Rule of Civil Procedure 26.03. *Id.*

Following the holdings of *Appman* and *Ballard*, the Court of Appeals in *Swift* considered a public records request by counsel for convicted murderer Phillip Workman. 159 S.W.3d at 568. Workman, who had been convicted of murder in Shelby County Criminal Court, filed a petition for a writ of habeas corpus in federal district court, collaterally attacking the result of his unsuccessful state court writ of error coram nobis proceeding. *Id.* at 569. His attorney made a Public Records Act request to the Assistant District Attorney General to inspect all documents in the possession of the District Attorney General regarding the State's defense of Workman's petition for writ of error coram nobis. *Id.* The request was denied. *Id.* Workman's attorney sued seeking disclosure of the records. *Id.* Noting that the Tennessee Post-Conviction Procedure Act and Tennessee Supreme Court Rule 28 provide that Rule 16 governs discovery in post-conviction proceedings, the Court of Appeals held that documents covered by Rule 16(a)(2) in the possession of the District Attorney General were not public records because they are among the class of records excepted from disclosure by state law. *Id.* at 575-76.[23] Thus, the *Swift* court held that documents enumerated in Rule 16(a)(2) are not subject to a Public Records Act request when the requested documents relate to a criminal conviction that is being collaterally attacked. 159 S.W.3d at 576. The court noted that the General Assembly, in adopting the Public Records Act, did not intend to allow litigants to avoid the requirements and limitation of the Rules of Criminal Procedure and the Rules of Civil Procedure by invoking the Public Records Act to obtain

---

[22] *See also Tennessean v. Tenn. Dep't of Pers.*, No. M2005-02578-COA-R3-CV, 2007 WL 1241337, at *10 (Tenn. Ct. App. Apr. 27, 2007) ("The Rules of Civil Procedure are state law that may exempt documents from the disclosure requirements of the [Public Records] Act."); *Arnold v. City of Chattanooga*, 19 S.W.3d 779, 786 (Tenn. Ct. App. 1999) (holding that the work product doctrine contained in the Tennessee Rules of Civil Procedure constitutes an exception to the Public Records Act).

[23] *See also Waller v. Bryan*, 16 S.W.3d 770, 776-77 (Tenn. Ct. App. 1999) (holding that Rule 16, as incorporated by the Tennessee Post-Conviction Procedure Act and Tennessee Supreme Court Rule 28, constitutes a "state law" exception to Public Records Act requests when the requested records relate to a pending post-conviction proceeding).

information not otherwise available to them through discovery. *Id.* The fact that Workman's attorney, not Workman himself, made the request did not affect the outcome, as the court noted that the question at issue was whether the requested documents constituted "a public record that must be disclosed to Mr. Workman's lawyers *or to any other interested citizen." Id.* at 575 (emphasis added).

In 2007, in *Schneider*, news outlets sought access to police officers' field interview cards. 226 S.W.3d at 334-35. We were presented with the issue of whether the common law provided a law enforcement investigative privilege, which operated to exempt from disclosure governmental records that would otherwise be accessible under the Public Records Act. *Id.* at 334. We held there was no law enforcement privilege in Tennessee but remanded the case to the trial court to determine whether any of the police department records were part of a pending, open, or ongoing criminal investigation and therefore exempt from disclosure. *Id.* We noted that the governmental entity had failed to show whether any of the field interview cards were exempt from disclosure under Rule 16(a)(2) because the cards were part of an ongoing criminal investigation. *Id.* at 345. As we pointed out, "the City's failure even to review the field interview cards for the purpose of identifying those cards or portions of cards containing information relevant to an ongoing criminal investigation [was] inexplicable, given that these cards would clearly have been exempt from disclosure under Rule 16(a)(2) and this Court's decision in *Appman." Id.* We noted that "harmful and irreversible consequences could potentially result from disclosing files that are involved in a pending criminal investigation." *Id.* at 345-46.

In this case, we must determine whether the Public Records Act applies to allow public access to investigative records that arise out of and are part of a criminal investigation resulting in a pending prosecution, are not the work product of law enforcement under Rule 16(a)(2), were gathered by law enforcement from other sources in their investigation of the case, and are requested by entities that are not parties to the pending criminal case.

We hold that Metro is not required to disclose the requested investigative records because the records come within the Public Records Act state law exception. As we held in *Appman* and again noted in *Ballard*, the Rules of Criminal Procedure constitute state law exceptions to the Public Records Act. Rule 16, as state law, controls the release of these records and provides for access to these records only to the parties to the criminal case—the State and the defendant. There is no provision in Rule 16 for release of discovery materials to the public. This case raises the same concerns that counseled in favor of our remand to the trial court in *Schneider*—the "harmful and irreversible consequences [that] could potentially result from disclosing files that are involved in a pending criminal investigation." *Schneider*, 226 S.W.3d at 345-46. As one recent article notes:

The pretrial criminal discovery process involves the reciprocal exchange of materials that the prosecution will use in attempting to secure a conviction and the information the defense will use in attempting to achieve an acquittal. The material exchanged includes information that may or may not eventually be submitted as evidence at trial or as part of some other adjudicative action.

. . .

Because of their inflammatory and sensitive nature, many of the records made available to the public as a result of the criminal discovery process would likely implicate the fair trial rights of a defendant as protected by the Sixth Amendment to the Constitution and the common law, statutory, and constitutional privacy interests of any third parties involved. When made available to a prospective jury pool, discovery materials could impair a defendant's ability to receive a fair trial. Discovery records also often contain personal information, such as physical descriptions, addresses, phone numbers, birthdates and social security numbers of witnesses, investigators, and victims, potentially implicating the privacy interests of numerous individuals both directly and indirectly involved in a criminal case.

Brian Pafundi, *Public Access to Criminal Discovery Records: A Look Behind the Curtain of the Criminal Justice System*, 21 U. Fla. J.L. & Pub. Pol'y 227, 232-33 (2010) (footnotes omitted).

Rule 16 of the Tennessee Rules of Criminal Procedure minimizes these risks by limiting access to discovery materials to the State and the defendant. If Rule 16 did not function as an exception to the Act, a defendant would have no reason to seek discovery under Rule 16, but would file a public records request and obtain the *entire* police investigative file, which could include more information than the defendant could obtain under Rule 16. Or if the media could make a public records request and obtain the investigative files, then the defendant and potential jurors could learn about the State's case against the defendant by reading a newspaper or watching a television news broadcast. This absurd result was not intended by the Legislature and would have a negative impact on a police department's ability to investigate criminal activity and a defendant's ability to obtain a fair trial.

Our holding finds support in a decision of the Supreme Court of North Carolina and in our own analogous rules of statutory construction. In *Piedmont Publishing Co. v. City of Winston-Salem*, 434 S.E.2d 176, 176-77 (N.C. 1993), a newspaper sought, under

the North Carolina Public Records Act, to inspect, examine, and obtain copies of recorded communications between two police officers and the police communications center during an investigation into the shooting of one of the officers. The Supreme Court of North Carolina affirmed the trial court's denial of the newspaper's request. *Id.* at 178. The majority opinion noted that the records sought "were unquestionably gathered by the Winston-Salem Police Department in the course of a criminal investigation and are part of the State's file in a pending criminal action." *Id.* at 177. The majority next noted that the North Carolina criminal discovery statute, like Tennessee Rule of Criminal Procedure 16, "provides for discovery, only by the defendant, of materials in the possession of the State for use in a criminal action." *Id.* The majority next acknowledged the newspaper's reliance on the North Carolina Public Records Act and agreed that "with nothing else appearing," the recordings the newspaper sought would be "public records" and "subject to inspection and copying by the [newspaper]." *Id.* The majority of the court concluded, however, that "[i]n this case something else does appear," namely the criminal discovery statute. *Id.* The majority of the court explained:

> Article 48 of Chapter 15A of the General Statutes provides for discovery in criminal actions. If the Public Records Act applies to information the State procures for use in a criminal action, there would be no need for Article 48. A criminal defendant could obtain much more extensive discovery under the Public Records Act. It is illogical to assume that the General Assembly would preclude a criminal defendant from obtaining certain investigatory information pursuant to the criminal discovery statutes while at the same time mandating the release of this information to the defendant, as well as the media and general public, under the Public Records Act.
>
> If we were to adopt the position advocated by the plaintiffs, that Chapter 132 applies in this case, the files of every district attorney in the state could be subject to release to the public. Among the matters that would have to be released would be the names of confidential informants, the names of undercover agents, and the names of people who had been investigated for the crime but were not charged. We do not believe the General Assembly intended this result.

*Id.* at 177. The majority of the court then concluded:

> One canon of construction is that when one statute deals with a particular subject matter in detail, and another statute deals with the same subject matter in general and comprehensive terms, the more specific statute will be construed as

controlling. Article 48 deals specifically with the disclosure of criminal investigative files as opposed to the more general provisions of Chapter 132. We hold that it governs in this case and there is no provision in it for discovery by anyone other than the State or the defendant.

*Id.* at 177-78.

In *Piedmont*, the three dissenting justices opined that the North Carolina Public Records Act controlled because no other statute excepted records maintained by the city police departments from its mandate. *Id.* at 179. However, this criticism is not applicable to our holding. In contrast to the North Carolina Public Records Act, our Act includes a general catch-all exception from disclosure where provided by other state laws, and Rule 16 constitutes such other state law.

Like North Carolina law, Tennessee law regarding statutory construction provides that the more specific of two conflicting statutory provisions controls, *see Graham v. Caples*, 325 S.W.3d 578, 582 (Tenn. 2010), and that courts are to avoid a construction that leads to absurd results, *see Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 527 (Tenn. 2010). And, like North Carolina, Tennessee has a specific rule that deals with discovery and disclosure in ongoing criminal proceedings. Rule 16 deals specifically with the discovery and disclosure of criminal investigative materials during a pending criminal proceeding; whereas the Public Records Act deals with access to public records. Rule 16 is the more specific provision and controls the discovery and disclosure of materials in a criminal case to the exclusion of the Public Records Act. Because Rule 16 does not provide for disclosure to a third party of materials subject to discovery between the State and a defendant during the pendency of the criminal case or any collateral challenges to the criminal conviction, the Petitioners cannot gain access to these materials under the Public Records Act, even though the materials may fall outside the substantive scope of Rule 16(a)(2).

The dissenting justice disagrees with the Court's interpretation of Rule 16 and incorrectly states that the basis for the Court's holding is Rule 16(a)(2). However, a fair reading of the Court's opinion clearly indicates that the Court based its decision on the state law provision of the Public Records Act, Tennessee Code Annotated section 10-7-503(a)(2)(A), Tennessee Rules of Criminal Procedure 16(a)(1) and 16(b)(1), and previous court decisions. The dissenting justice, in a thinly disguised effort to stir up controversy and garner public attention, argues that the Court has created a "public policy exception" to the Public Records Act that only the General Assembly is authorized to enact. This is pure fabrication—there is no factual or legal basis for this assertion. Even a cursory review shows that the Court's decision is based on the legislatively-created state law exception to the Public Records Act, Tennessee Code Annotated § 10-7-503(a)(2)(A). The dissenting justice concedes that exceptions to disclosure may be found in the rules of court, including Rule 16 of the Tennessee Rules of Criminal

- 19 -

Procedure, pursuant to this statutory provision. The ill-conceived result advocated by the dissent would have profound adverse consequences for the criminal justice system. It would potentially compromise criminal investigations, prevent defendants from having fair trials, and further victimize crime victims. The Court's decision, unlike the dissent, applies the law enacted by the Legislature and protects the integrity of the criminal justice system.

### D. Protection of the Victim's Rights

Ms. Doe intervened in this action to prevent the release of the police investigative file and expressed a specific concern over the Petitioners' request to obtain the video of the alleged assault, a surveillance video that includes her image, and any photographs of her taken during and immediately after the alleged assault. Our ruling today protects Ms. Doe's privacy concerns by shielding all of the investigative records from disclosure during the pendency of the criminal proceedings and any collateral challenges to any convictions.[24] At the conclusion of the criminal proceedings, Tennessee Code Annotated section 10-7-504(q)(1) grants protection to Ms. Doe by providing that when a defendant has plead guilty or been convicted of and sentenced for a sexual offense or violent sexual offense specified in Tennessee Code Annotated section 40-39-202, the following information is confidential and shall not be disclosed: the victim's name; home, work and email addresses; telephone numbers; social security number; and any photographic or video depiction of the victim. Ms. Doe may waive these protections, but otherwise is not required to take any affirmative action. The General Assembly wisely enacted this exception to the Public Records Act to protect the release of a victim's private information and any photographic or video depictions without the necessity of a court proceeding.

### III. Conclusion

The media plays an important and necessary role in holding government officials accountable. Yet, the General Assembly has rightly recognized that there must be exceptions to the public's right to obtain government records and, in doing so, has provided that the media's role must yield to the need to protect the rights of defendants accused of crimes and the integrity of the criminal justice system during the pendency of criminal cases and any collateral challenges to criminal convictions. Under the facts of this case, Rule 16 governs the disclosure of information, and only the defendants, not the public, may receive information contained in the police investigative files. We hold that, based on Rule 16, the Petitioners have no right to the requested information during the pendency of the criminal cases and any collateral challenges to any convictions. Our

---

[24] The dissenting justice expresses concern for Ms. Doe and her right to be treated with "dignity and compassion," Tenn. Code Ann. § 40-38-102a)(1), yet would throw open the police department's investigative records for all to see.

decision today and the provisions of Tennessee Code Annotated section 10-7-504(q)(1) protects Ms. Doe's privacy concerns.

The judgment of the Court of Appeals is affirmed on other grounds. Costs are taxed to the Petitioners, *The Tennessean*, Associated Press, *Chattanooga Times Free Press*, *Knoxville News Sentinel*, Tennessee Associated Press Broadcasters, Tennessee Coalition for Open Government, Inc., *The Commercial Appeal*, WBIR-TV Channel Ten, WSMV-TV Channel Four, WTVF-TV, News Channel 5 Network, LLC, and WZTV Fox 17, and their surety, for which execution may issue if necessary.

_____
SHARON G. LEE, CHIEF JUSTICE