IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
June 4, 2019 Session

## SCRIPPS MEDIA, INC., ET AL. v. TENNESSEE DEPARTMENT OF MENTAL HEALTH AND SUBSTANCE ABUSE SERVICES, ET AL.

Appeal from the Chancery Court for Davidson County
No. 18-835-II     Anne C. Martin, Chancellor

No. M2018-02011-COA-R3-CV

This appeal concerns a request for public records. Phil Williams ("Mr. Williams"), a reporter, requested records from the Tennessee Department of Mental Health and Substance Abuse Services ("TDMHSAS") and the Tennessee Bureau of Investigation ("TBI") ("the State," collectively) concerning an alleged affair between two State officials that may have involved public funds. The State refused on the basis that the records were part of an ongoing criminal investigation. Mr. Williams and his employer, Scripps Media, Inc. ("Scripps"), ("Petitioners," collectively) then filed a petition in the Chancery Court for Davidson County ("the Trial Court") seeking the records via the Tennessee Public Records Act ("the TPRA"), Tenn. Code Ann. § 10-7-101 *et seq.* Before the petition was heard, the investigation ended and the State produced the records. The Trial Court found the public interest exception applied notwithstanding the petition's mootness and determined that the records were exempted from disclosure by Tenn. R. Crim. P. 16. Petitioners appealed. As did the Trial Court, we find this to be a matter of public interest warranting resolution even though moot. We hold that non-investigative public records made in the ordinary course of business, capable of being accessed from their inception by citizens of Tennessee, do not become exempt from disclosure because of the initiation of a criminal investigation in which they become relevant. Finding the State's legal argument reasonable although erroneous, we decline Petitioners' request for attorney's fees under the TPRA. We affirm, in part, and reverse, in part, the judgment of the Trial Court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed, in Part, and Reversed, in Part; Case Remanded**

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S. and RICHARD H. DINKINS, J., joined.

Ronald G. Harris and William J. Harbison, II, Nashville, Tennessee, for the appellants, Scripps Media, Inc. and Phil Williams.

Herbert H. Slatery, III, Attorney General and Reporter; Andrée S. Blumstein, Solicitor General; Janet M. Kleinfelter, Deputy Attorney General; and, Andrew B. Campbell, Assistant Attorney General, for the appellees, the Tennessee Bureau of Investigation and the Tennessee Department of Mental Health & Substance Abuse Services.

Paul R. McAdoo, Nashville, Tennessee, for amici curiae, the Associated Press, Gannett Co., Inc., Gatehouse Media, LLC, Gray Television Group, Inc., Sinclair Broadcast Group, Inc., the Tennessee Coalition for Open Government, Inc., and Tribune Media Company.

## OPINION

### Background

On June 15, 2018, then-Governor Bill Haslam began receiving emails from Kim Locke ("Ms. Locke"), wife of former Acting TBI Director Jason Locke ("Mr. Locke"), asserting that her husband was having an affair with Sejal West ("Ms. West"), an employee with TDMHSAS. In an email to Governor Haslam, Ms. Locke stated that her husband "picked up a gun last night and held it in his hands the whole time we talked." Ms. Locke stated that she felt she was in danger. In another email, she wrote: "Sejal West's husband told me that there were numerous trips out of town on state time that they took together, jason only admitted to 2 trips." As a result of receiving these emails, Governor Haslam asked the Tennessee Department of Safety and Homeland Security to investigate. On June 18, 2018, Governor Haslam asked the Comptroller's Office to assist in the investigation. Also on June 18, the District Attorney General for the 20th Judicial District announced he was joining the investigation.

On June 15, 2018, the same day she contacted the Governor, Ms. Locke also contacted Nashville television station NewsChannel 5, which is owned by Scripps. Mr. Williams, chief investigative reporter for NewsChannel 5, began to investigate the matter. Mr. Williams put in several requests for public records. On June 15, 2018, Mr. Williams requested from the TBI all travel reimbursement and per diem requests submitted by Mr. Locke since November 2016; all logs of phone calls made on any mobile phone assigned to Mr. Locke since November 2016; and, any e-mails between Mr. Locke and Ms. West. Mr. Williams sought from TDMHSAS the same materials regarding Ms. West. On June 18, Mr. Williams sought from TDMHSAS Ms. West's electronic calendar since November 2016 and, from the TBI, the electronic calendars for Mr. Locke for the same time period. On June 19, Mr. Williams sought from TDMHSAS any items in Ms. West's

-2-

personnel file or any other file kept by the Commissioner or her designee regarding Ms. West's resignation. On June 20, Mr. Williams sought from TDMHSAS any e-mail or other written communication related to Ms. West's job status. On June 21, Mr. Williams sought from the TBI transaction summaries since July 2, 2016 for any credit cards or p-cards that may have been assigned to Mr. Locke. On June 22, Mr. Williams sought from the TBI any text messages between Mr. Locke and Ms. West.

On June 22, 2018, the State, through the Attorney General's Office, refused to disclose the records, citing an ongoing criminal investigation. In a July 11, 2018 letter, the State repeated this position, adding that "once the criminal investigation is completed, and if there is no ensuing prosecution, the investigation will be closed and the requested records will be made available. . . ."

On July 31, 2018, Petitioners filed their Petition for Access in the Trial Court pursuant to the TPRA, seeking access to the records as well as attorney's fees. Petitioners cited to Tenn. Code Ann. § 10-7-503(a)(2)(A), which provides:

> All state, county and municipal records shall, at all times during business hours, which for public hospitals shall be during the business hours of their administrative offices, be open for personal inspection by any citizen of this state, and those in charge of the records shall not refuse such right of inspection to any citizen, unless otherwise provided by state law.

Tenn. Code Ann. § 10-7-503(a)(2)(A) (Supp. 2018).

Before the petition was heard, the criminal investigation concluded and the State disclosed the records. In September 2018, the Trial Court conducted a hearing on the petition. Notwithstanding the petition's mootness, the Trial Court performed an analysis of the relevant factors and concluded that the public interest exception to the mootness doctrine applied such that the matter should be decided. The Trial Court stated, in part: "[C]larity in the law regarding public record disclosure obligations is much needed, due to the intrinsic importance of transparency in government and the frequency of such requests. As discussed above, it is likely this issue will arise again."

The Trial Court went on to agree with the State that the records were exempt from disclosure. In so determining, the Trial Court relied heavily on *Tennessean v. Metro. Gov't of Nashville*, 485 S.W.3d 857 (Tenn. 2016), an opinion in which our Supreme Court concluded that the "other state law" catch-all exception of Tenn. Code Ann. § 10-7-503(a)(2)(A) means that Tenn. R. Crim. P. 16 controls discovery and disclosure in a criminal case rather than the TPRA. In its October 2018 order, the Trial Court discussed its rationale:

The notable difference between the facts in *Tennessean* and the present case is that the requests were directed to non-investigative State agencies,[1] and the records were developed and retained by those agencies in the ordinary course of business. They were not created for or through an investigation, but rather became part of the investigation after it was commenced. The State takes the position that the records changed in character when the investigation began and that, by becoming part of the investigation, they fell under the Rule 16 exception. Further, the State contends that it does not matter the nature of the records when they were created, but rather their nature when produced. The State relies on the importance of the constitutional rights of criminal defendants, as discussed in detail in *Tennessean*, as well as the public policy that parties should not be able to avoid the discovery rules in the Tennessee Rules of Criminal Procedure to obtain prosecutors' files. *Tennessean*, 485 S.W.3d at 866-73.

The Petitioners take the opposite position—that the nature of the records when they were created is key, not whether they are subsequently provided to another agency as part of an investigation. They rely on *Chattanooga Pub. Co. v. Hamilton County Election Com'n*, E2003-00076-COA-R3-CV, 2003 WL 22469808 (Tenn. Ct. App. Oct. 31, 2003), where the facts are analogous to the facts in this case, i.e., the public records were provided to the investigative agency as a result of a criminal investigation subsequent to their creation. In *Chattanooga Pub Co.*, the Court of Appeals found that the nature of the records *at the time of the request* controlled how they were classified and whether the Rule 16 exemption applied. *Id.* at *1 and *4. While *Chattanooga Pub. Co.* could arguably be applied to find that the records requested in the present case are not subject to Rule 16 exemption, the more recent ruling in *Tennessean* militates against such a result. Even though the records sought in *Tennessean* were in the possession of the law enforcement agency *because of* an investigation, and the records in the present case were transferred to a law enforcement agency to *initiate* an investigation, the rule in *Tennessean* applies to documents in the possession of an investigative agency relevant to a pending or contemplated criminal action and affords those records blanket protection pursuant to Rule 16. Thus, even though the records at issue are still public records created "in connection with the transaction of official business by [a] governmental agency," Tenn. Code Ann. §10-7-503(a)(1)(A), and even though the records are not of the same nature or character as the records sought in *Tennessean*, the Court's intention in

---

[1] The TBI is, of course, by its very nature an investigative agency, but the TBI records included in the Requests were operational, non-investigative records.

*Tennessean* appears to be for a broad application of the Rule 16 exemption to protect any documents in an investigative file from disclosure. Under this interpretation, the State acted properly in protecting the records from disclosure.

(Footnote in original but renumbered). Having ruled in favor of the State, the Trial Court declined to award Petitioners their attorney's fees under the TPRA. Petitioners timely appealed to this Court.

## Discussion

Although not stated exactly as such, Petitioners raise the following issues on appeal: 1) whether the Trial Court erred in holding that state officials properly denied access to non-investigative public records simply because such records subsequently became relevant to a criminal investigation; and 2) whether Petitioners should be awarded attorney's fees for the denial of access. The State raises two separate issues on appeal, which we restate as follows: 1) whether Scripps lacks standing; and 2) whether this appeal should be dismissed as moot. Numerous amici curiae organizations submitted a brief in support of Petitioners.

We first address the State's issues, beginning with whether Scripps lacks standing. Petitioners concede Scripps is not a citizen of Tennessee. The State argues that Scripps should be dismissed on that basis. Language from the TPRA bolsters the State's position. Tenn. Code Ann. § 10-7-503(a)(2)(A) provides: "All state, county and municipal records shall, at all times during business hours . . . be open for personal inspection by any *citizen of this state*, and those in charge of the records shall not refuse such right of inspection to any citizen, unless otherwise provided by state law." Tenn. Code Ann. § 10-7-503(a)(2)(A) (Supp. 2018) (emphasis added). When access to such non-exempt records is denied, "[a]ny *citizen of Tennessee* . . . shall be entitled to petition for access to any such record and to obtain judicial review of the actions taken to deny the access." Tenn. Code Ann. § 10-7-505(a) (2012) (emphasis added).

The State is correct in that Scripps, as a non-citizen of Tennessee, could not avail itself of the TPRA to petition for access to public records. We, therefore, dismiss Scripps from the appeal. Mr. Williams, however, undisputedly is a citizen of Tennessee, and could properly bring this action. The appeal thus proceeds with Mr. Williams as the sole remaining appellant.

We next address the State's second separate issue of whether this appeal should be dismissed as moot. Regarding justiciability and mootness, our Supreme Court has stated:

-5-

This Court must first consider questions pertaining to justiciability before proceeding to the merits of any remaining claims. *See UT Med. Grp., Inc. v. Vogt*, 235 S.W.3d 110, 119 (Tenn. 2007) (noting that justiciability is a threshold inquiry). The role of our courts is limited to deciding issues that qualify as justiciable, meaning issues that place some real interest in dispute, *Colonial Pipeline Co. v. Morgan*, 263 S.W.3d 827, 838 (Tenn. 2008), and are not merely "theoretical or abstract," *Norma Faye Pyles Lynch Family Purpose LLC v. Putnam Cnty.*, 301 S.W.3d 196, 203 (Tenn. 2009). A justiciable issue is one that gives rise to "a genuine, existing controversy requiring the adjudication of presently existing rights." *Vogt*, 235 S.W.3d at 119. Justiciability encompasses several distinct doctrines, two of which are at issue in this appeal—mootness and standing.

### 1. Mootness

To be justiciable, an issue must be cognizable not only at the inception of the litigation but also throughout its pendency. *Norma Faye Pyles Lynch Family Purpose LLC*, 301 S.W.3d at 203–04. An issue becomes moot if an event occurring after the commencement of the case extinguishes the legal controversy attached to the issue, *Lufkin v. Bd. of Prof'l Responsibility*, 336 S.W.3d 223, 226 (Tenn. 2011), or otherwise prevents the prevailing party from receiving meaningful relief in the event of a favorable judgment, *see Knott v. Stewart Cnty.*, 185 Tenn. 623, 207 S.W.2d 337, 338 (1948); *Cnty. of Shelby v. McWherter*, 936 S.W.2d 923, 931 (Tenn. Ct. App. 1996). This Court has recognized a limited number of exceptional circumstances that make it appropriate to address the merits of an issue notwithstanding its ostensible mootness: (1) when the issue is of great public importance or affects the administration of justice; (2) when the challenged conduct is capable of repetition and evades judicial review; (3) when the primary dispute is moot but collateral consequences persist; and (4) when a litigant has voluntarily ceased the challenged conduct. *Lufkin*, 336 S.W.3d at 226 n. 5 (citing *Norma Faye Pyles Lynch Family Purpose LLC*, 301 S.W.3d at 204).

*City of Memphis v. Hargett*, 414 S.W.3d 88, 96 (Tenn. 2013). "Determining whether a case is moot is a question of law." *Alliance for Native Am. Indian Rights in Tennessee, Inc. v. Nicely*, 182 S.W.3d 333, 338-39 (Tenn. Ct. App. 2005).

The State disclosed the requested records before the petition was heard below. In point of fact, the case is moot. The question now is whether an exception to the mootness doctrine applies. The legal issue presented, whether otherwise accessible public records

-6-

cease to be accessible upon the initiation of a criminal investigation, goes to the core of the TPRA. It concerns governmental transparency and the ability of Tennessee citizens to access information related to the workings of their public officials. Although the State points out that there is no constitutional right to examine public records, the issue clearly is one of great public importance.

With regard to the public interest exception, our Supreme Court has provided further guidance, stating:

> [U]nder "exceptional circumstances where the public interest clearly appears," *Dockery v. Dockery*, 559 S.W.2d 952, 955 (Tenn. Ct. App. 1977), the appellate courts may exercise their judgment and discretion to address issues of great importance to the public and the administration of justice. *State v. Rodgers*, 235 S.W.3d at 97. To guide their discretion, the courts should first address the following threshold considerations: (1) the public interest exception should not be invoked in cases affecting only private rights and claims personal to the parties; (2) the public interest exception should be invoked only with regard to "issues of great importance to the public and the administration of justice"; (3) the public interest exception should not be invoked if the issue is unlikely to arise in the future; and (4) the public interest exception should not be invoked if the record is inadequate or if the issue has not been effectively addressed in the earlier proceedings.

*Norma Faye Pyles Lynch Family Purpose LLC v. Putnam Cnty.*, 301 S.W.3d 196, 210 (Tenn. 2009) (footnotes omitted). This Court has addressed the " 'capable of repetition yet evading review' " exception and explained:

> The courts invoke the "capable of repetition yet evading review" exception to the mootness doctrine only in exceptional cases. Parties requesting a court to invoke the exception must demonstrate (1) a reasonable expectation that the official acts that provoked the litigation will occur again, (2) a risk that effective judicial remedies cannot be provided in the event that the official acts reoccur, and (3) that the same complaining party will be prejudiced by the official act when it reoccurs. A mere theoretical possibility that an act might reoccur is not sufficient to invoke the "capable of repetition yet evading review" exception. Rather, "there must be a 'reasonable expectation' or a 'demonstrated probability' that the same controversy will recur involving the same complaining party." *Murphy v. Hunt*, 455 U.S. 478, 482, 102 S.Ct. 1181, 1184, 71 L.Ed.2d 353

(1982); 1 RONALD D. ROTUNDA & JOHN E. NOWAK, TREATISE ON CONSTITUTIONAL LAW § 2.13, at 37 (3d ed. Supp. 2005).

*Alliance for Native Am. Indian Rights in Tennessee, Inc.*, 182 S.W.3d at 339-40 (footnotes omitted).

Upon our review of all the relevant factors, we believe the issue presented in this case warrants resolution notwithstanding its mootness. Tennessee citizens, including journalists, will continue to scrutinize the government. There are bound to be similar occurrences in the future. In the instant case, the investigation ended fairly quickly and the records were produced. One can well visualize a situation involving a protracted investigation that goes on far longer. Rather than keep both Tennessee citizens and the State in confusion as to the state of the law, it is preferable to tackle this issue now. The question presented is straightforward and amenable to resolution. We find that the public interest exception to the mootness doctrine applies. We proceed to address Mr. Williams' issues.

We now address whether the Trial Court erred in holding that state officials properly denied access to non-investigative public records simply because such records subsequently became relevant to a criminal investigation. The State argues that our Supreme Court has made it clear that the initiation of a criminal investigation renders public records relevant to that investigation exempt from disclosure even if they had a non-investigative origin and otherwise would be perfectly accessible. Two opinions by our Supreme Court shed considerable light on the issue. In *Appman v. Worthington*, 746 S.W.2d 165 (Tenn. 1987), our Supreme Court determined that materials relevant to an ongoing prosecution were exempt from disclosure. The *Appman* Court stated, in part:

> Rule 16 provides for the disclosure and inspection of categories of evidence in the possession of the state or in the possession of the defendant. However, the disclosure and inspection granted by the rule "does not authorize the discovery or inspection of reports, memoranda, or other internal state documents made by . . . state agents or law enforcement officers in connection with the investigation or prosecution of the case, . . ." Rule 16(a)(2) of the Rules of Criminal Procedure. This exception to disclosure and inspection does not apply to investigative files in possession of state agents or law enforcement officers, where the files have been closed and are not relevant to any pending or contemplated criminal action, but does apply where the files are open and are relevant to pending or contemplated criminal action. *See Memphis Publishing Company v. Holt*, 710 S.W.2d 513 (Tenn. 1986). *See also State v. Goodman*, 643 S.W.2d 375 (Tenn. Crim. App. 1982), which holds that a fiber and hair analysis report

by an F.B.I. agent was, prior to delivery of the report to the district attorney general, "within the possession, custody or control of the State" for the purposes of Rule 16(a)(1)(D), T.R.Cr.P.

The memoranda, documents and records sought to be inspected by appellees in this case are the results of the investigation by Internal Affairs of the Department of Correction into the murder of Carl Estep, an inmate in a correctional facility operated by the state. Several inmates of the facility, including the petitioner Nicholas Todd Sutton, were indicted for the murder of Mr. Estep. Petitioner, David W. Stufflestreet, was indicted as an "accessory after the fact." The materials sought by appellees are relevant to the prosecution of the petitioners and other inmates charged with offenses arising out of the murder of Carl Estep. These prosecutions have not yet been terminated. It necessarily follows under Rule 16(a)(2) that access to the materials in the possession of Sergeant Worthington are not subject to inspection by appellees, who are counsel for the indicted petitioner-inmates.

*Appman*, 746 S.W.2d at 166-67.

In more recent times, our Supreme Court addressed a different scenario in *Tennessean*. The initial public records request in *Tennessean* was as follows:

Brian Haas, a reporter for Nashville newspaper *The Tennessean*, made a public records request to the Metro Police, asking to inspect any records regarding the alleged rape on the Vanderbilt University campus in which Vandenburg, Banks, Batey, McKenzie, and Boyd were charged. The request specifically included any text messages received or sent and videos provided and/or prepared by any third party sources.

*Tennessean*, 485 S.W.3d at 860. The *Tennessean* Court went on to hold that the records were exempt from disclosure:

[T]he Legislature provided for a general exception to the Public Records Act, based on state law. Tennessee Code Annotated section 10-7-503(a)(2)(A) provides that governmental records shall be open for inspection and that the right of inspection shall not be denied "unless otherwise provided by state law." "State law" includes statutes, the Tennessee Constitution, the common law, rules of court, and administrative rules and regulations. *Swift*, 159 S.W.3d at 571-72 (citing *Tenn. Small Sch. Sys. v. McWherter*, 851 S.W.2d 139, 148 (Tenn. 1993); *Frye v. Blue Ridge*

-9-

*Neuroscience Ctr., P.C.*, 70 S.W.3d 710, 713 (Tenn. 2002); *Emery v. S. Ry.*, 866 S.W.2d 557, 561 (Tenn. Ct. App. 1993); *Kogan v. Tenn. Bd. of Dentistry*, No. M2003-00291-COA-R3-CV, 2003 WL 23093863, at *5-6 (Tenn. Ct. App. Dec. 30, 2003)).  The Tennessee Rules of Criminal Procedure, including Rule 16, are "state law" and are encompassed within this exception. *Ballard*, 924 S.W.2d at 662.

***

In this case, we must determine whether the Public Records Act applies to allow public access to investigative records that arise out of and are part of a criminal investigation resulting in a pending prosecution, are not the work product of law enforcement under Rule 16(a)(2), were gathered by law enforcement from other sources in their investigation of the case, and are requested by entities that are not parties to the pending criminal case.

We hold that Metro is not required to disclose the requested investigative records because the records come within the Public Records Act state law exception.  As we held in *Appman* and again noted in *Ballard*, the Rules of Criminal Procedure constitute state law exceptions to the Public Records Act.  Rule 16, as state law, controls the release of these records and provides for access to these records only to the parties to the criminal case—the State and the defendant.  There is no provision in Rule 16 for release of discovery materials to the public.  This case raises the same concerns that counseled in favor of our remand to the trial court in *Schneider*—the "harmful and irreversible consequences [that] could potentially result from disclosing files that are involved in a pending criminal investigation." *Schneider*, 226 S.W.3d at 345-46.  As one recent article notes:

> The pretrial criminal discovery process involves the reciprocal exchange of materials that the prosecution will use in attempting to secure a conviction and the information the defense will use in attempting to achieve an acquittal. The material exchanged includes information that may or may not eventually be submitted as evidence at trial or as part of some other adjudicative action.
>
> ...

-10-

Because of their inflammatory and sensitive nature, many of the records made available to the public as a result of the criminal discovery process would likely implicate the fair trial rights of a defendant as protected by the Sixth Amendment to the Constitution and the common law, statutory, and constitutional privacy interests of any third parties involved. When made available to a prospective jury pool, discovery materials could impair a defendant's ability to receive a fair trial. Discovery records also often contain personal information, such as physical descriptions, addresses, phone numbers, birthdates and social security numbers of witnesses, investigators, and victims, potentially implicating the privacy interests of numerous individuals both directly and indirectly involved in a criminal case.

Brian Pafundi, *Public Access to Criminal Discovery Records: A Look Behind the Curtain of the Criminal Justice System*, 21 U. Fla. J.L. & Pub. Pol'y 227, 232-33 (2010) (footnotes omitted).

Rule 16 of the Tennessee Rules of Criminal Procedure minimizes these risks by limiting access to discovery materials to the State and the defendant. If Rule 16 did not function as an exception to the Act, a defendant would have no reason to seek discovery under Rule 16, but would file a public records request and obtain the *entire* police investigative file, which could include more information than the defendant could obtain under Rule 16. Or if the media could make a public records request and obtain the investigative files, then the defendant and potential jurors could learn about the State's case against the defendant by reading a newspaper or watching a television news broadcast. This absurd result was not intended by the Legislature and would have a negative impact on a police department's ability to investigate criminal activity and a defendant's ability to obtain a fair trial.

*Id*. at 865-66, 870-71.

Our Supreme Court elaborated further upon its rationale for finding the records exempt from disclosure, stating:

Ms. Doe intervened in this action to prevent the release of the police investigative file and expressed a specific concern over the Petitioners' request to obtain the video of the alleged assault, a surveillance video that

-11-

includes her image, and any photographs of her taken during and immediately after the alleged assault. Our ruling today protects Ms. Doe's privacy concerns by shielding all of the investigative records from disclosure during the pendency of the criminal proceedings and any collateral challenges to any convictions.[2] At the conclusion of the criminal proceedings, Tennessee Code Annotated section 10-7-504(q)(1) grants protection to Ms. Doe by providing that when a defendant has pleaded guilty or been convicted of and sentenced for a sexual offense or violent sexual offense specified in Tennessee Code Annotated section 40-39-202, the following information is confidential and shall not be disclosed: the victim's name; home, work and email addresses; telephone numbers; social security number; and any photographic or video depiction of the victim. Ms. Doe may waive these protections, but otherwise is not required to take any affirmative action. The General Assembly wisely enacted this exception to the Public Records Act to protect the release of a victim's private information and any photographic or video depictions without the necessity of a court proceeding.

*Id*. at 873-74 (footnote in original but renumbered).

Our review of the controlling law leads us to disagree with the State. Far from not mattering, there is a major difference between public records created in the ordinary course of business and materials found in an investigative file. The former encompasses the routine documentation of public business conducted by the government, the very sort of records for which the TPRA was enacted to allow citizens to inspect if they wish. The latter relates to criminal investigations and prosecutions, giving rise to the myriad concerns about constitutional rights, privacy, and a fair trial. Our Supreme Court has made it clear that the TPRA may not be used as a means to bypass normal discovery rules. Throwing open an investigative file could, in fact, damage the integrity of an investigation or prosecution, as well as prove injurious to the defendant. Mr. Williams, however, did not seek the contents of an investigative file. He sought non-investigative public records that were created in the ordinary course of business and kept by their respective agencies. Under the TPRA, he was entitled to inspect them. The State acknowledges that the records here would have been disclosed but for the criminal investigation and, in fact, actually were disclosed after the criminal investigation ended. Indeed, these records were accessible from their inception. That they later were relevant to a criminal investigation did not alter either their nature or where they are kept.

---

[2] The dissenting justice expresses concern for Ms. Doe and her right to be treated with "dignity and compassion," Tenn. Code Ann. § 40-38-102a)(1), yet would throw open the police department's investigative records for all to see.

The State dismisses any distinction between records produced in the ordinary course of business and those investigative in nature, observing in its brief that our Supreme Court in *Tennessean* "specifically excluded from production '[b]uilding surveillance tapes,' university 'access card information,' and '[r]eports and emails' provided by Vanderbilt University, *Tennessean*, 485 S.W.3d at 861—all of which would have been created in the ordinary course of business prior to the initiation of the criminal investigation." This is true, but beside the point. A private institution such as Vanderbilt University generally does not have to disclose its records under the TPRA. For petitioners in *Tennessean* to access any records prepared by Vanderbilt, they had to vindicate their theory that materials gathered by law enforcement in its investigation but prepared by a third party were not exempt from disclosure. Our Supreme Court rejected that argument. Here, Mr. Williams did not need to and did not probe into an investigative file at all. The records he requested were created and kept by their respective State agencies in non-investigative files. It was the State that went out of its way to cloak records that otherwise were accessible.

Under the State's position, even public records accessible via the TPRA for years prior may abruptly become exempt from disclosure, an astonishing proposition. Presumably, the State would hope that no Tennessee citizen had bothered to investigate the records before it became interested in them lest they possibly be disseminated. That appears to be the State's logic, in any case. The State argues that public records created in the routine course of business stop being accessible when they become relevant to a criminal investigation and can then be withheld until the investigation ends, or perhaps beyond. That is not the holding of *Tennessean*. The State's position goes well beyond *Tennessean*, wherein our Supreme Court sought to protect the contents of an active investigative file from disclosure under the TPRA regardless of the source of the material. If routinely made public records become relevant to a criminal investigation, then that is incidental to their original purpose. Prosecutors may use already publicly available information as part of their case but that information does not cease to be public. The records at issue could have been accessed by Tennessee citizens all along, and should have been disclosed by the State at the outset upon request.

We hold that public records created in the ordinary course of business, which are non-investigative in nature, and which are otherwise accessible by Tennessee citizens under the TPRA, do not subsequently become exempt from disclosure because of the initiation of a criminal investigation in which those records become relevant. We reverse the judgment of the Trial Court as to this issue.

The final issue we address is whether Mr. Williams should be awarded attorney's fees for the denial of access. With respect to attorney's fees, the TPRA provides:

(g) If the court finds that the governmental entity, or agent thereof, refusing to disclose a record, knew that such record was public and willfully refused to disclose it, such court may, in its discretion, assess all reasonable costs involved in obtaining the record, including reasonable attorneys' fees, against the nondisclosing governmental entity. In determining whether the action was willful, the court may consider any guidance provided to the records custodian by the office of open records counsel as created in title 8, chapter 4.

Tenn. Code Ann. § 10-7-505(g) (2012). As to what willfulness consists of for purposes of this statute, this Court has stated: "To the extent that the determination of willfulness under the statute is a 'bad faith' inquiry, that inquiry should focus on whether there is an absence of good faith with respect to the legal position a municipality relies on in support of its refusal of records." *Friedmann v. Marshall County, TN*, 471 S.W.3d 427, 438 (Tenn. Ct. App. 2015). Our Supreme Court has instructed that "in assessing willfulness, Tennessee courts must not impute to a governmental entity the 'duty to foretell an uncertain juridical future.'" *Schneider v. City of Jackson*, 226 S.W.3d 332, 346 (Tenn. 2007) (quoting *Memphis Publ'g Co. v. City of Memphis*, 871 S.W.2d 681, 689 (Tenn. 1994)).

We understand how the State, under a fair reading of the law, could have arrived at its view that the records here were exempt from disclosure. In fact, the Trial Court did just that. A reasonable mind could interpret from the leading cases a kind of blanket exemption for public records relevant to criminal investigations. The State had a tenable, if, in the end, erroneous, basis for acting as it did. We do not find the State's refusal to disclose the records when initially asked "willful" for purposes of Tenn. Code Ann. § 10-7-505(g). We affirm the Trial Court as to its denial of attorney's fees.

## Conclusion

The judgment of the Trial Court is affirmed, in part, and reversed, in part, and this cause is remanded to the Trial Court for collection of the costs below. The costs on appeal are assessed against the Appellees, the Tennessee Bureau of Investigation and the Tennessee Department of Mental Health & Substance Abuse Services.

_____
D. MICHAEL SWINEY, CHIEF JUDGE