# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### December 6, 2023 Session

## STACY JACOBSON v. TENNESSEE DEPARTMENT OF CHILDREN'S SERVICES

**Appeal from the Chancery Court for Davidson County**
**No. 22-0662-1     Patricia Head Moskal, Chancellor**

---

### No. M2022-01610-COA-R3-CV

---

This appeal arises from a Tennessee Public Records Act ("TPRA") petition to access a Tennessee Department of Children's Services ("DCS") case file regarding its investigation into the fatality of a fourteen-year-old boy. The petition also sought disclosure of the investigation into the child's death, as well as four prior investigations related to the same child, pursuant to Tennessee Code Annotated § 37-5-107. Prior to the filing of the petition, the petitioner, Stacy Jacobson ("Ms. Jacobson"), submitted a written request to obtain the unredacted version of the deceased child's case file, along with the records from four prior DCS investigations related to the child. DCS denied the requests, citing several legal bases, including Tennessee Code Annotated § 37-5-124, Tennessee Code Annotated §§ 37-1-409 and 612, Tennessee Code Annotated § 37-5-107, Tennessee Rule of Criminal Procedure 16 ("Rule 16"), and the 2013 Davidson County Chancery Court order requiring that DCS redact all such records to eliminate information made confidential under state law. Thereafter, Ms. Jacobson filed a petition in the Chancery Court of Davidson County to obtain access to the unredacted public records, the four related investigative files, and for her attorney's fees and costs. The trial court denied the petition, finding that, under "the state law exception" to the TPRA, which encompasses Rule 16, the redacted portions of the case file and the four related investigative files are exempt from disclosure because they are relevant to an ongoing criminal prosecution of the deceased child's family members who are alleged to be responsible for his abuse and death. Ms. Jacobson subsequently filed a motion to alter or amend judgment, arguing that the trial court had failed to consider whether the DCS records from the prior investigations involving the deceased child were part of the child's "full case file." The trial court denied the motion, finding that a ruling on this issue would constitute an advisory opinion. Ms. Jacobson appeals the trial court's denial of her requests. For the reasons explained below, we vacate the judgment of the trial court and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Vacated and Remanded**

FRANK G. CLEMENT, JR., P.J., M.S., delivered the opinion of the court in which W. NEAL MCBRAYER and JEFFREY USMAN, JJ., joined.

Paul R. McAdoo, Brentwood, Tennessee, for the appellant, Stacy Jacobson.

Jonathan Skrmetti, Attorney General and Reporter, Andrée S. Blumstein, Solicitor General, and Michael M. Stahl, Senior Assistant Attorney General, for the appellee, Tennessee Department of Children's Services.

## OPINION

### FACTS AND PROCEDURAL HISTORY

The facts underlying this appeal involve a DCS investigation into the tragic death of a child in 2020. On January 7, 2020, a fourteen-year-old boy was found unresponsive at a residence in Shelby County, Tennessee, and was pronounced dead at the scene.

On the same day, DCS received a referral of death as a result of suspected child abuse. Acting on the referral, DCS coordinated an investigation of the matter, which was conducted by a Child Protective Investigative Team ("CPIT") pursuant to Tennessee Code Annotated § 37-1-406(b). The CPIT team included a representative from DCS, a representative from the Office of the District Attorney General, a juvenile court official, and a law-enforcement officer. The CPIT investigation resulted in the criminal indictment of seven adults who resided in the child's home. The indictments were issued on June 10, 2021. DCS closed its investigation on June 29, 2021. DCS's investigative report concluded, in pertinent part, that the allegations of an abuse death were substantiated by a preponderance of the evidence.

Shortly thereafter, DCS published a heavily redacted version of the deceased child's case file (hereinafter "Case File No. 2020-008") to its website pursuant to Tennessee Code Annotated § 37-5-124.[1] The information redacted from Case File No. 2020-008 included "notes on the initial abuse allegations, the Department's interviews with family members, its assessments of the siblings . . . autopsy results of the deceased child, and the Department's ultimate conclusions." The case file also contained a one-page summary of four prior investigations concerning the deceased child that were conducted in 2006, 2008, 2009, and 2015; however, the records from those previous investigations were not published.

On August 4, 2021, Ms. Jacobson, a reporter for WREG-TV in Memphis, Tennessee, made a public records request to DCS for "the full case file for Case No. 2020-

---

[1] The public version of Case File No. 2020-008 may be found at https://files.dcs.tn.gov/childsafety/2020/Deaths/2020.008.pdf.

008." On August 23, 2021, Ms. Jacobson's attorney followed up with DCS to ask whether "DCS has reconsidered whether to include the prior investigations in the released case file for Case No. 2020-008." Later that same day, Ms. Jacobson emailed DCS, stating,

> I also wanted to follow up to request the full case file for Case No. 2020-008. I realize it [the case file] is available on DCS's website, but I would like to receive DCS's formal response so I am fully informed as to the legal bases for the redactions.

On August 26, 2021, DCS responded through its general counsel Douglas Dimond ("Mr. Dimond") and denied Ms. Jacobson's requests. Mr. Dimond stated that the online redacted version of Case File No. 2020-008 was made "in accordance with the guidelines we have followed since 2013" and that he "did not anticipate adding to that file." When he was later asked to specify DCS's statutory bases for redacting the file, Mr. Dimond responded that the bases for the denial, in addition to Tennessee Code Annotated § 37-5-124, were

> Tenn. Code Ann. §§ 37-1-409 and 612; Tenn. Code Ann. § 37-5-107, Tenn. R. Crim. App. 16, and the 2013 Davidson County Chancery Court order requiring that we redact all such records to eliminate information made confidential under state law.[2]

Mr. Dimond also denied Ms. Jacobson's request to include the records from the four prior investigations related to the deceased child in the public version of Case File No. 2020-008.

On May 9, 2022, Ms. Jacobson filed a petition in the Davidson County Chancery Court to access public records from DCS. In addition to asserting claims pursuant to the TPRA, Ms. Jacobson's petition contended, inter alia, that Tennessee Code Annotated § 37-5-107 specifically governs the public disclosure of information about children who have died or suffered a near fatality due to abuse or neglect, as was the case here. Ms. Jacobson also contended that, following the closure of an investigation into a child abuse or neglect fatality or near fatality, Tennessee Code Annotated § 37-5-107(c)(4)(C) mandates that DCS "release the final disposition of the case, whether the case meets criteria for a child death review and the full case file." She noted that Tennessee Code Annotated § 37-5-107(c)(4)(C) states that when the report is released "[t]he case file may be redacted to comply with the confidentiality requirements of this section," and that § 37-5-107 generally limits redactions to the identity of the child, family, and person who made a report of harm,

---

[2] *See Tennessean v. Tenn. Dep't of Child.'s Servs.*, No. 12-1769-II (Davidson Cnty. Chancery Ct. filed Jan. 23, 2013).

Tenn. Code Ann. § 37-5-107(a), along with certain student records, Tenn. Code Ann. § 37-5-107(g), and drug and alcohol records, Tenn. Code Ann. § 37-5-107(h).

Thus, Ms. Jacobson argued that DCS "should be required to produce Case File No. 2020-008, in full, with redactions limited to those required by Tennessee Code Annotated § 37-5-107" and that any redactions made in accordance with Rule 16 and other state law provisions were improper.

Ms. Jacobson's petition requested, inter alia, that the court order DCS to appear for a hearing and show cause as to why her petition should not be granted, that the court issue a declaratory judgment that DCS violated the TPRA in declining to allow her access to the records that she requested, and that the court order DCS to immediately make these records available to her. She also requested her attorney's fees pursuant to Tennessee Code Annotated § 10-7-505(g).

On June 3, 2022, the trial court held a show cause hearing in accordance with the TPRA and conducted an in camera inspection of the records in question. In a final order entered on June 23, 2022, the court denied Ms. Jacobson's petition. Relying, in principal part, on the reasoning in *Tennessean v. Metropolitan Government of Nashville*, 485 S.W.3d 857 (Tenn. 2016), the court explained,

> Tenn. R. Crim. P. 16 provides for and limits disclosure of information by the State or defendants during criminal proceedings. Rule 16(a)(2) specifically limits the release of any information related to a criminal proceeding as follows:
>
> > Except as provided in paragraphs (A), (B), (E), and (G) of subdivision (a)(1), this rule does not authorize the discovery or inspection of reports, memoranda, or other internal state documents made by the district attorney general or other state agents or law enforcement officers in connection with investigating or prosecuting the case. Nor does this rule authorize discovery of statements made by state witnesses or prospective state witnesses.
>
> Tenn. R. Crim. P. 16.
>
> The court further stated:
>
> The Court is informed in this case that the State is criminally prosecuting certain family members of the deceased child and those criminal proceedings are ongoing. *See* Def.'s Response, Ex. 1, Beacham Aff. Based on the Court's *in camera* review of the DCS files, the Court finds that the redacted

- 4 -

information, such as witness interviews and other investigative information, relates to the criminal prosecutions of the family members of the deceased child as the alleged perpetrators of abuse.

Based on these and other findings, the court held that Ms. Jacobson was not permitted to access "the requested information during the pendency of the criminal prosecutions related to the child's death and any collateral changes to the results of those criminal proceedings." Given its finding that all of the records requested by Ms. Jacobson were protected from disclosure under Rule 16, the court stated that it need not "reach the issue of the scope of the information that may otherwise be subject to disclosure under the TPRA, the inclusion of the related records, or the construction of the DCS statutes after all criminal proceedings are concluded." The court also denied Ms. Jacobson's request for attorney's fees.

Ms. Jacobson timely filed a motion to alter or amend judgment, wherein she argued that the court failed to reach the second issue raised in her petition: whether, absent the application of Rule 16, the records of the prior investigations concerning the deceased child were part of the "full case file" of Case File No. 2020-008. Ms. Jacobson requested that the court alter or amend its decision to address this secondary issue.

On October 17, 2022, the court entered an order on Ms. Jacobson's motion. The court stated that it specifically addressed the prior investigative records in its ruling. The court further stated:

> In addition to identifying the issue presented as including whether the related prior investigation files should be disclosed, the Court reviewed the unredacted versions of the prior investigative files *in camera* and found that [Ms. Jacobson] was not permitted access to "the unredacted Case File No. 2020-008, or the related investigative files," under Tenn. R. Crim. P. 16 during the pendency of the criminal proceedings against family members of the deceased child.

The court also noted that it would be issuing "an advisory opinion" if it were to consider whether the prior investigative files would be part of the "full case file" if Rule 16 were not applicable. Accordingly, the court denied Ms. Jacobson's motion.

This appeal followed.

## ISSUES

On appeal, Ms. Jacobson raises four issues:

1. Did the trial court err in holding that DCS may redact a case file on a deceased child whose death was investigated for child abuse or neglect pursuant to Tennessee Rule of Criminal Procedure 16, contrary to the language of Tennessee Code Annotated § 37-5-107, which limits redactions to the full case file of a child abuse or neglect fatality to those enumerated in that section of the Tennessee Code?

2. Did the trial court err in failing to order DCS to release the records from its four prior investigations involving the deceased child as part of the "full case file" under Tennessee Code Annotated § 37-5-107(c)(4)(C)?

3. Did the trial court err in declining to award Ms. Jacobson her reasonable attorney's fees and costs pursuant to Tennessee Code Annotated § 10-7-505(g), due to DCS's knowing and willful withholding of public records?

4. Should this Court award Ms. Jacobson her reasonable attorney's fees and costs associated with this appeal pursuant to Tennessee Code Annotated § 10-7-505(g), due to DCS's knowing and willful withholding of public records?

### STANDARD OF REVIEW

There are no factual disputes in this case. Thus, the outcome of this case depends on our interpretation of the TPRA, Tennessee Rule of Criminal Procedure 16, Tennessee Code Annotated § 37-5-107 and the application of the relevant laws to the facts of this case. *See Tennessean v. Metro.*, 485 S.W.3d at 863. We review questions of law de novo without affording a presumption of correctness to the trial court's decision. *Id.* (citations omitted).

"When interpreting statutes, we must determine and give effect to the Legislature's intent in adopting the statute without adding or taking away from its intended meaning or application." *Id.*

> The overriding purpose of a court in construing a statute is to ascertain and effectuate the legislative intent, without either expanding or contracting the statute's intended scope. *Ray v. Madison Cnty., Tenn.*, 536 S.W.3d 824, 831 (Tenn. 2017); *Pressley*, 528 S.W.3d at 512. Legislative intent is first and foremost reflected in the language of the statute. *Lee Medical, Inc. v. Beecher*, 312 S.W.3d 515, 526 (Tenn. 2010). "We presume that the Legislature intended each word in a statute to have a specific purpose and meaning." *Arden*, 466 S.W.3d at 764. The words used in a statute are to be given their natural and ordinary meaning, and, because "words are known by the company they keep," we construe them in the context in which they appear and in light of the general purpose of the statute. *Lee Medical*, 312

- 6 -

S.W.3d at 526; *Ray*, 536 S.W.3d at 831. "We endeavor to construe statutes in a reasonable manner 'which avoids statutory conflict and provides for harmonious operation of the laws.'" *Ray*, 536 S.W.3d at 831 (citation omitted). When a statute's text is clear and unambiguous, we need look no further than the language of the statute itself. *Lee Medical*, 312 S.W.3d at 527. "We simply apply the plain meaning without complicating the task." *Pressley*, 528 S.W.3d at 513.

*Wallace v. Metro. Gov't of Nashville*, 546 S.W.3d 47, 52–53 (Tenn. 2018).

Additionally, we "must construe a statute so that no part will be inoperative, superfluous, void or insignificant, and the court must give effect to every word, phrase, clause and sentence." *Young v. Frist Cardiology, PLLC*, 599 S.W.3d 568, 571 (Tenn. 2020) (citations and internal quotation marks omitted).

We review a declaratory judgment, *see generally* Tennessee Code Annotated §§ 29-14-101 et. seq., tried without a jury "de novo on the record with a presumption of correctness as to the findings of fact of the trial court, unless the evidence preponderates otherwise." *Phillips v. Hatfield*, 624 S.W.3d 464, 473–74 (Tenn. 2021) (citations omitted). In order for the evidence to preponderate against the trial court's findings of fact, it must support another finding of fact with greater convincing effect. *Id.* at 474. (citations omitted).

## ANALYSIS

### I. THE TENNESSEE PUBLIC RECORDS ACT

As an initial matter, we note that Ms. Jacobson's petition sought parallel or alternative relief under the TPRA and Tennessee Code Annotated § 37-5-107. Thus, we shall first consider whether Ms. Jacobson has a right to access the redacted portions of Case File No. 2020-008 under the TPRA. Thereafter, we shall consider Tennessee Code Annotated § 37-5-107.

The TPRA, codified at Tennessee Code Annotated § 10-7-101 et seq., "provides citizens of Tennessee with broad access to records of Tennessee governmental agencies" along with the records of private agencies that "have a relationship so extensive with the government that they are the 'functional equivalent of a governmental agency.'" *Patterson v. Convention Ctr. Auth. of Metro. Gov't of Nashville & Davidson Cnty.*, 421 S.W.3d 597, 605 (Tenn. Ct. App. 2013) (citations omitted). The TPRA reads:

> All state, county and municipal records shall . . . be open for personal inspection by any citizen of this state, and those in charge of the records shall

not refuse such right of inspection to any citizen, **unless otherwise provided by state law**.

Tenn. Code Ann. § 10-7-503(a)(2)(A) (emphasis added).

Our state Supreme Court shed considerable light on the state law exception to the TPRA in *Tennessean v. Metro.* There, a coalition of media groups and a citizens' organization brought a petition under the TPRA to access a police department's investigative records related to an alleged campus rape. *Tennessean v. Metro.* 485 S.W.3d at 860. At the time of the request, a criminal prosecution related to the alleged rape was ongoing. *See id.* at 862. Thus, the state argued that the requested investigative records were exempt from disclosure pursuant to Rule 16 because they were "relevant to a pending or contemplated criminal action." *Id.* at 866.

There, the Court noted that "there are numerous statutory exceptions to disclosure" of government records in the TPRA, including a general exception based on "state law," *Id.* at 865, and that the state law exception to the TPRA "includes statutes, the Tennessee Constitution, the common law, rules of court, and administrative rules and regulations." The Court further noted that "[t]he Tennessee Rules of Criminal Procedure, including Rule 16," are "state law" and are "encompassed within this exception." *Id.* at 865–866 (citations omitted). Because the police investigative files at issue were "part of a criminal investigation resulting in a pending prosecution," *Id.* at 870, the Court found that they were protected from disclosure under Rule 16 "during the pendency of the criminal proceedings and any collateral challenges to any convictions." *Id.* at 874. Accordingly, the Court ruled that the state was not required to disclose the requested records because they "come within the Public Records Act state law exception." *Id.* at 870.

The trial court correctly noted in its final order that criminal proceedings involving the deceased child's family members were ongoing at the time that Ms. Jacobson made her public records request. The trial court further found that the unredacted version of Case File No. 2020-008 and the previous investigative records were relevant to the ongoing criminal prosecutions of the child's family members, and the evidence does not preponderate against these findings. We thus agree that, to the extent that the TPRA applies, Case File No. 2020-008 is protected from disclosure under the state law exception to the TPRA, specifically Rule 16. *See Appman v. Worthington*, 746 S.W.2d 165, 166 (Tenn. 1987) (finding that the disclosure exception in Rule 16 applies to investigative files that are open and relevant to a pending or contemplated criminal action).

Although we find the Supreme Court's ruling in *Tennessean* to be controlling, at least as it applies to Ms. Jacobson's TPRA claims, we also note, and find it significant, that Tennessee Code Annotated § 37-5-107 was not at issue in *Tennessean.* Thus, our holding regarding the TPRA claims does not exhaust our inquiry because we must now consider whether Tennessee Code Annotated § 37-5-107 is applicable, and if so, to what extent.

- 8 -

Ms. Jacobson contends that DCS has a mandatory duty under Tennessee Code Annotated § 37-5-107 to disclose Case File No. 2020-008, as well as the four prior investigative files related to the deceased child, "with redactions limited to those required by Tenn. Code Ann. § 37-5-107."

As the trial court correctly noted in its final order:

Tenn. Code Ann. § 37-5-107 provides for the general confidentiality of DCS records and reports regarding children or families receiving DCS services. Disclosure of those records is prohibited except under limited circumstances.

However, a limited circumstance arises after the close of a DCS investigation into a **fatality** resulting from child abuse or neglect. Tennessee Code Annotated § 37-5-107(c)(4)(C) states that

**(C) Following the closure of an investigation for a child abuse or neglect fatality**, **the department shall release the final disposition of the case**, whether the case meets criteria for a child death review **and the full case file. The case file may be redacted to comply with the confidentiality requirements of this section**.

(Emphasis added).

Under "this section," that being § 37-5-107, redactions are generally limited to the identity of the child, the family, and the person who made the report of harm. Tenn. Code Ann. § 37-5-107(a).[3] In sum, if and when Tennessee Code Annotated § 37-5-107(c)(4)(C) is applicable, DCS must release the full case file subject to the confidentiality provision that "[t]he case file may be redacted to comply with the confidentiality requirements of this section." *Id.* § 37-5-107(a).[4]

---

[3] Tenn. Code Ann. § 37-5-107(a) reads as follows:

All applications, certificates, records, reports and all legal documents, petitions and records made or information received pursuant to this title that directly or indirectly identify a child or family receiving services from the department or that identify the person who made a report of harm pursuant to § 37-1-403 or § 37-1-605 shall be kept confidential and shall not be disclosed, except as provided by this section and §§ 37-1-131, 37-1-409, 37-1-612 and 49-6-3051.

[4] The mandatory disclosure provision in Tennessee Code Annotated § 37-5-107(c)(4)(C) was added in 2014. *See* 2014 Tenn. Laws Pub. Ch. 771 (H.B. 1505) (effective July 1, 2014). Prior to the 2014 amendment, Tennessee Code Annotated § 37-5 107(c)(4) only provided that "[t]he department shall release

As noted earlier, the trial court correctly interpreted the TPRA and our Supreme Court's decision in *Tennessean v. Metro*. However, that case involved public records generally, while the case at bar is specific to a DCS case file pertaining to a child abuse or neglect **fatality**. More importantly, this case presents a legal issue that was not presented in or discussed in the *Tennessean* case.

As the *Tennessean* case explains, the TPRA provides that "[i]nformation made confidential **by state law** shall be redacted whenever possible," referencing state laws generally rather than limiting its application to one section of the code. *Id.* § 10-7-503(a)(5) (emphasis added). By contrast, Tennessee Code Annotated § 37-5-107(c)(4)(C) states unequivocally that, once a DCS investigation involving a child abuse or neglect fatality is closed, the case file **shall** be made public subject to redactions that are limited to those specified in "this section." *Id.* ("The case file may be redacted to comply with the confidentiality requirements of this section.").

Here, the phrase "this section" is a limiting provision. As Ms. Jacobson correctly observes in her brief, Tennessee statutes are classified by Titles, Chapters, Parts, Sections, Subsections, and Subdivisions. Unlike the TPRA, Tennessee Code Annotated § 37-5-107 does not incorporate by reference other state laws. As discussed, the TPRA, specifically Tennessee Code Annotated § 10-7-503(a)(2)(A), permits redactions—the withholding of information—based on other "state law" provisions, such as Rule 16 of the Tennessee Rules of Criminal Procedure.[5] Conversely, Tennessee Code Annotated § 37-5-107(c)(4)(A) has no such provision, and mandates, after the close of an investigation into a child abuse or neglect fatality, that DCS shall publish the case file with redactions limited

---

information in the following circumstances: . . . (4) [t]o provide for the public disclosure of information about any case that results in a child fatality or near fatality in compliance with 42 U.S.C. § 5106a(b)(2)(B)(x)." Tenn. Code Ann. § 37-5-107(c)(4) (effective July 1, 2012 to June 30, 2014). Regarding the statute's reference to 42 U.S.C. § 5106a(b)(2)(B)(x), Ms. Jacobson correctly states the following in her brief:

> That federal citation is part of the Child Abuse Prevention and Treatment Act ("CAPTA"), which requires states receiving federal funds to release information on **child fatalities and near fatalities** caused by abuse and neglect—including information on the state's prior investigations and services provided to the child, among other things. 42 U.S.C. § 5106a(b)(2)(B)(ix); R. v. 4 at 453–55; Child Welfare Policy Manual, U.S. Dep't of Health & Hum. Servs., § 2.1A.4, Question/Answer 8 (Sept. 2012), https://perma.cc/R6HH-5N9Q." (emphasis added).

[5] Specifically, as we have mentioned, the TPRA reads: "All state, county and municipal records shall . . . be open for personal inspection by any citizen of this state, and those in charge of the records shall not refuse such right of inspection to any citizen, **unless otherwise provided by state law**." Tenn. Code Ann. § 10-7-503(a)(2)(A) (emphasis added).

to those listed in the confidentiality provisions of "this section," meaning Tennessee Code Annotated § 37-5-107.

Thus, we may only consider the confidentiality provision within the applicable section, Tennessee Code Annotated § 37-5-107, not other state laws such as those incorporated by reference in Tennessee Code Annotated § 10-7-503(a)(2)(A). Moreover, the meaning of the phrase "in this section" is unequivocal. The "confidentiality requirements" within Tennessee Code Annotated § 37-5-107 are both clear and limited, applying to (1) information "that directly or indirectly identif[ies] a child or family receiving services from [DCS]" and (2) information that "directly or indirectly . . . identif[ies] the person who made a report of harm pursuant to § 37-1-403 or § 37-1-605." Tenn. Code Ann. § 37-5-107(a).

As noted earlier, the trial court denied Ms. Jacobson's application to access the unredacted case file at issue based on the reasoning set forth in the *Tennessean* case, specifically the TPRA and Rule 16. It is readily apparent that the mandate in Tennessee Code Annotated § 37-5-107 is in conflict with the TPRA and Rule 16. Thus, we must look to the authorities concerning statutory construction to resolve the conflict.

One of the fundamental tenets of statutory construction requires courts to resolve a conflict between two statutory provisions by applying the more specific provision over a more general one. *See Graham v. Caples*, 325 S.W.3d 578, 582 (Tenn. 2010) (citing *Arnwine v. Union Cnty. Bd. of Educ.*, 120 S.W.3d 804, 809 (Tenn. 2003)) ("Where a conflict is presented between two statutes, a more specific statutory provision takes precedence over a more general provision.").

Tennessee Code Annotated § 37-5-107 is a specific provision that governs the release of confidential DCS case files pertaining to child fatalities and near fatalities due to alleged abuse or neglect. Conversely, the TPRA has a much broader and more general application, as does Rule 16. The TPRA "provides citizens of Tennessee with broad access to records of Tennessee governmental agencies" along with the records of private agencies that "have a relationship so extensive with the government that they are the 'functional equivalent of a governmental agency.'" *Patterson*, 421 S.W.3d at 605 (citations omitted). And Rule 16 is a general provision that pertains to "all criminal proceedings conducted in all Tennessee courts of record." Tenn. R. Crim. P. 1(a). By contrast, the application of Tennessee Code Annotated § 37-5-107(c)(4) is limited to DCS case files that pertain to child abuse or neglect fatalities. Thus, Tennessee Code Annotated § 37-5-107(c)(4) is more specific than the TPRA and/or Rule 16. Accordingly, to the extent that they conflict, Tennessee Code Annotated § 37-5-107(c)(4)(C) controls the manner by which and the extent to which DCS is to release the final disposition of Case File No. 2020-008 and the four previous case files involving the same child.

Although the trial court referenced Tennessee Code Annotated § 37-5-107 in its final order, it is readily apparent that its final decision was not based on Tennessee Code Annotated § 37-5-107, but that it was based on the state law exception to the TPRA and Rule 16. More importantly, the trial court did not conduct a thorough analysis of the applicability of Tennessee Code Annotated § 37-5-107(c)(4) to the facts of this case. Accordingly, we find it appropriate to remand the issues presented to the trial court for further consideration in the context of Tennessee Code Annotated § 37-5-107(c)(4).

Therefore, we vacate the trial court's decision denying Ms. Jacobson's application to access the DCS records at issue and remand for further proceedings consistent with this opinion.

## III. THE REMAINING ISSUES

Ms. Jacobson raised other issues, including whether DCS was required to disclose its case files regarding the four previous investigations and whether she is entitled to recover her attorney's fees incurred in the trial court. We have determined these issues may be impacted by the trial court's decision following remand. Accordingly, we vacate the trial court's rulings regarding these issues and remand them to the trial court for further consideration.

For similar reasons, we deny Ms. Jacobson's request to recover her attorney's fees incurred in this appeal.

## IN CONCLUSION

The judgment of the trial court is vacated and this matter is remanded for further proceedings consistent with this opinion. Costs of appeal are assessed equally against the appellant, Stacy Jacobson and the appellee, the Department of Children's Services.

_____
FRANK G. CLEMENT JR., P.J., M.S.